(No. 37356.—

THE CITY OF CHICAGO, Appellee, *vs.* SHELL OIL COMPANY *et al.*—(H. ELIZABETH GALBREATH, Appellant.)

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

THERIES C. LINDSEY, of Chicago, for appellant.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and JOHN J. O'TOOLE, Assistants Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

On May 2, 1961, plaintiff, the city of Chicago, filed a petition in the superior court of Cook County to condemn various parcels of land involved in the redevelopment of a blighted area. Included was a property belonging to the defendant, H. Elizabeth Galbreath, who here appeals from a jury verdict awarding her $8,000. She contends that her property has been taken from her without just compensation, and that a comment by the trial court prejudiced the jury against her.

Defendant's property, located at 5462 S. Ingleside Avenue in Chicago, is a parcel with a frontage of 21 feet and a depth of 104 feet. On the date the petition was filed it was improved with a two-story frame duplex residence, with full basement. The structure, approximately 70 years old, had seven rooms—three on the first floor and four bedrooms and a bath on the second, the largest bedroom being 7½ feet by 12 feet. The general condition of the building was described as being from "poor" to "fair." Also located on the lot was an old brick garage which had but three walls, was roofless and generally in a bad state of disrepair. Defendant made her home in the premises from 1950 until April, 1961, when she started moving her furniture out because her neighbors had left, and vandals

and trespassers started moving into the area. The jury viewed the premises on April 16, 1962, and it appears that in the period of almost a year which had intervened since the petition was filed, defendant had made improvements by painting the main structure both inside and outside, by replacing broken windows, by sanding the floors and by cleaning up generally.

Two expert witnesses for plaintiff testified, respectively, that the value of the premises on the date the petition had been filed was $7,000 and $7,200. An expert witness for defendant, who did not inspect the premises until two days before the trial, fixed the fair market value on May 2, 1961, at $10,500. Defendant, as a witness in her own behalf, testified that she "could get" $18,000 for her property.

It is settled in condemnation cases that where the jury's verdict is within the range of the evidence, and the jury has viewed the premises, the verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake. (*Department of Public Works and Buildings* v. *Christensen*, 25 Ill.2d 273; *City of Chicago* v. *Giedraitis*, 14 Ill.2d 45.) The verdict here was within the range of the evidence and thus, without more, any interference on our part would be unwarranted. However, defendant insists that she was prejudiced and the verdict of the jury improperly influenced when an agent of the plaintiff, two days before trial and the jury's view of the premises, partially "destroyed" and "demolished" defendant's property.

We find these contentions to be completely out of proportion with what is shown in the record. As previously noted, defendant's lot was but one of many being acquired for the redevelopment project which, it appears, had gotten under way before the matter of defendant's property was settled. Two days before trial the demolition contractor came upon defendant's premises apparently intending to raze the roofless garage. However, after removing the

crossbeam of the roof, the contractor proceeded no farther when defendant and her attorney intervened. We fail to see how this minor alteration prejudiced the defendant or fatally and adversely influenced the jury's verdict. The uncontradicted evidence shows that the garage, at all times pertinent, was in fact a dilapidated and deteriorated partial structure with little apparent value, and that the jurors were fully advised what had been done by the demolition contractor, thus enabling them to adjust accordingly any conclusion as to value they may have reached from viewing the premises. Moreover, it is axiomatic that compensation for land taken for public use is to be determined as of the date a petition for condemnation is filed, (*Department of Public Works and Buildings* v. *Divit,* 25 Ill.2d 93; *People ex rel. Harding* v. *Atwater,* 362 Ill. 546,) and all of the expert testimony on value presented for the jury's consideration was based on the condition of the garage as it existed when the petition was filed. Under all of the circumstances, we cannot say that the jury was misled, or that the removal of one crossbeam from an otherwise derelict structure adversely influenced its verdict in any manner.

For the first time in this court defendant advances the claim that the "demolition" of her property by the contractor was a taking of her property without just compensation, and that the plaintiff's "destruction" of "vital evidence" denied her the right to a fair trial contemplated by constitutional guarantees of due process of law. While it is enough to say that these purported constitutional issues are not properly before us because they were never raised, passed upon and preserved for review in the trial court, (*Group Securities, Inc.* v. *Carpentier,* 13 Ill.2d 41; *Teren* v. *City of Chicago,* 413 Ill. 141,) we are of the opinion that defendant's claims rest on insecure foundations. In the absence of pertinent authority or a statement of logical reasons, neither of which have been given us, we are not prepared to say that the removal of the one beam from the

garage was either a taking of defendant's property or the destruction of evidence. The essential elements of due process in a civil proceeding are notice and an opportunity to be heard in an orderly proceeding adapted to the nature of the case. (*Barnett* v. *Cook County*, 373 Ill. 516; *People ex rel. Barrett* v. *Logan County Building and Loan Assn.* 369 Ill. 518.) It is manifest that defendant had such notice and opportunity here, that she was in no manner impeded from informing the jury of the fortuitous circumstance that a beam had been removed from the garage before the trial began, and that she received just compensation within the limits fixed by the evidence.

When defendant appeared as a witness she was somewhat hostile and repeatedly volunteered unresponsive answers to the questions put to her. In an ensuing colloquy between the witness and the court, during which the court sought to patiently explain rules of evidence and the scope and purpose of the proceeding, the trial judge at one time stated: "The authorities want this land for public improvement, for the welfare of the city, and someone has to suffer." It is now urged that this remark prejudiced defendant in the eyes of the jury, inasmuch as it caused her to appear as one who was trying to block the progress of the city. We do not agree that this is so. Indeed, the remark cast defendant in the role of a "sufferer," and, if anything, would tend to excite sympathy on her behalf. Moreover, when read in context with the entire colloquy it appears that the court's remark was intended to be conciliatory and comforting, and that the jury could only have understood it as such.

We are satisfied that defendant had a fair trial and that the verdict of the jury rested solely upon the competent evidence, untinged by passion or prejudice. Accordingly, the judgment of the superior court of Cook County is affirmed.

*Judgment affirmed.*