THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* HERMAN
E. JANSSEN *et al.,* Defendants-Appellees.

(No. 74-346;

Second District (2nd Division)—December 22, 1975.

William J. Scott, Attorney General, of Chicago (Leonard W. Golan and Robert C. Thomas, Assistant Attorneys General, of counsel), for appellant.

Edward T. Graham, of Glen Ellyn, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of a condemnation case. The Department of Transportation of the State of Illinois condemned the defendant's property in connection with the construction of an expressway interchange in the vicinity of North Avenue and Illinois Route 53. The jury awarded the defendant $45,000 as the just compensation for the taking of his property and the State appeals, contending the award is excessive and was influenced by erroneous rulings of the trial court.

The State contends the trial court erred (1) in allowing improper testimony to the effect that the highest and best use of the subject property was to hold it for future development; (2) in denying the State a preliminary hearing outside the presence of the jury on the question of the reasonable probability of rezoning; (3) in denying admission of its proffered evidence of a comparable sale; (4) in allowing the defendant to give evidence of the effect of the proposed highway construction on the trend of zoning in the area; (5) in refusing to admit into evidence the original deed to the property showing a restriction to residential use; (6) in denying the State's motion for a mistrial following prejudicial remarks made by a witness for the defendant or to strike his testimony, and (7) in allowing defendant's valuation witness to testify to a value based on estimated square foot value of comparable property. We will briefly discuss the State's contentions in the order named.

For the reason noted in the discussion of the State's second point, we do not here consider the State's first contention.

As to the State's second point, we agree that under proper procedure a preliminary hearing should be held by the trial court on the question of the reasonable probability of rezoning within a reasonable time, before a witness is allowed to testify as to the effect of rezoning on the value of the condemned property. This court so held in *Department of Public Works & Buildings v. Rogers*, 78 Ill.App.2d 141, and *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill.App.2d 1.

■■■ However, we do not have a clear-cut violation of that rule in this case. No evidence was offered as to the value of the property if it were to be rezoned. The evidence objected to was to the effect that nearby properties had been rezoned to commercial use and that the subject property was capable of being put to commercial use, if rezoned. The relevance of such testimony prior to any evidence on the probability of rezoning might be questionable. But, the evidence was obviously offered for the purpose of establishing, not the actual value, but the propriety

of using as the highest and best use the continued holding of the land for future development. Two witnesses were allowed to testify that an element they considered in arriving at the value of the property was the use they described as "holding for future development." In our opinion this was an improper element—it was not a use at all and was highly speculative. However, the State did not preserve its objection to this testimony because the point was not included in the post-trial motion. Therefore, it cannot be considered here. On the other hand, since the State did not object to it when offered, it provided some basis for the testimony as to the trend toward business development in the area and and the subject property's adaptability for such use.

■■ Moreover, in view of the peculiar fact situation existing here, a hearing on the reasonable probability of rezoning would have been of no value to the State. The property adjacent to the subject property, consisting of four lots, identical in size to the condemned lot, had previously been rezoned for commercial use by order of the same court in a previous zoning case. The holding of the court as to the probability of rezoning the subject property was so clearly indicated by the previous zoning case as to make a hearing on this point superfluous. The court's order in the previous zoning case was introduced into evidence by the defendant and the court could hardly have decided against the defendant on this point. Under these circumstances the lack of a hearing on the question was not significant.

It is generally accepted that the question as to whether or not a proffered sale is sufficiently comparable to be offered in evidence and considered by the jury as an aid to determining the value of the condemned property, is a question of law and largely within the discretion of the trial court. (*City of Evanston v. Piotrowicz,* 20 Ill.2d 512.) This court, commenting on this question in *Department of Business & Economic Development v. Brummel,* 1 Ill.App.3d 683, said:

> "It was, of course, the legitimate function of the trial court to consider whether these other properties were sufficiently similar to the subject property to permit the jury to consider their sales as evidence of value. The determination whether a property is 'sufficiently similar' is not capable of precise definition and must be made, in each case, within the wide discretion of the trial court." (1 Ill.App.3d 683, 686.)

The comparable sale offered in this case consisted of four lots of identical size, one improved with a dwelling (the size and condition of which is not revealed by the record), which were sold as one parcel for $85,000. When counsel for the Department asked the witness the sale price of the four lots in question, defense counsel objected on the ground

that no ruling had been made by the court as to the admissibility of the sale as a comparable sale and that this was contrary to an agreement previously made in chambers between counsel that no comparable sale would be introduced without the court having first passed on whether it was admissible as a comparable sale. Counsel for the State denied there was any such understanding but the court stated it recalled the agreement and ruled that the question and the answer should be stricken and the jury was instructed to disregard it.

The State denies the existence of any such agreement and there is no record of it in the report of the proceedings of the trial court. The State contends that in any event the exclusion of evidence of a comparable sale cannot be justified on the basis that counsel violated an agreement not to proceed with such evidence until it was approved by the court as a comparable sale, as such a result is arbitrary and disregards the merits of the evidence itself.

██ We do not feel it necessary to pass on the question of whether or not the court's ruling excluding the proffered sale was a justifiable sanction for violating the alleged agreement. The record does not reflect that the admission of the sale was otherwise free from doubt. The comparable property was a lump sale of four lots for a total price and the single lot with the improvements may have been worth more than a fourth of this price. Moreover, the seller was allowed to retain the proceeds of any condemnation award and this expectation was substantial, although unknown at the time of the sale. Under these circumstances, we are not prepared to say that the sale was so comparable that its exclusion can only be assumed to be due to a disregard of the alleged agreement. The situation is not that clear, and as otherwise the comparability of the sale was properly within the court's discretion, we are not inclined to regard its exclusion as a reversible error.

The testimony of the defendant's witness to the effect that the proposed construction had an adverse effect on the trend of zoning to commercial may have been a proper objection. The objection was based on the State's reading of the intent of section 9.7, amending chapter 47 (Ill. Rev. Stat. 1973, ch. 47, par. 9.7), the Eminent Domain Act. This section reads as follows:

"§ 9.7. Except as to property designated as possessing a special use, the fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which such amount of money shall be determined and ascertained as of the date of filing the petition to condemn. Provided, that in the

condemnation of property for a public improvement there shall be excluded from such amount of money any appreciation in value proximately caused by such improvement, and any depreciation in value proximately caused by such improvement. Provided further, that such appreciation or depreciation shall not be excluded where property is condemned for a separate project conceived independently of and subsequent to the original project."

The State contends that the testimony of the defendant that the trend toward commercial zoning was dampened by the imminence of condemnation for the highway construction, was an attempt to increase the value of the property by reference to the condemnation. If so, however, it was so indirect as to present a question as to whether it actually violated the statute. Asked by defendant's counsel why there appeared to be a gap in the commercial zoning in the area of the subject property, the witness answered that it was because of the highway (proposed) construction. This, however, is not the same as asking what effect the condemnation had on the subject property or giving evidence as to appreciation or depreciation based on the imminence of highway construction. It was the State which first called attention to the residential character of the immediate environs and it is doubtful that it was the intention of the quoted section of the statute to preclude an answering comment. While we are aware of the salutary purpose of the statute we are inclined to think that the State gives it an overbroad construction in this particular context.

In any event, however, this rather negative testimony, in our opinion, was not of such weight and significance in affecting the jury's verdict as to require a reversal. There was no direct testimony as to the effect of the condemnation on the market value of the property in question and the indirect testimony referred to seems too attenuated in its effect on the question of just compensation to be of serious impact.

■■ The State also assigns as error the refusal of the trial court to allow certified copies of deeds into evidence for the purpose of showing the property was restricted to residential use. The original deed reciting this restriction was executed in 1946 and was a matter of record. The defendant purchased the property in 1964, subject to covenants and restrictions of record. The trial court's ruling was apparently based on the theory that the restriction was not a covenant running with the land and having been imposed almost thirty years previously at a time when the area was predominently agricultural, such restriction had no relevance at the present time. Some cases have so held as to restrictions on the use of property where the character of the neighborhood has changed to something drastically different from the original condition. (*Ewertsen v. Gerstenberg*, 186 Ill. 344; *Exchange National Bank v. City of Des Plaines*,

127 Ill.App.2d 122.) On the other hand, numerous decisions have upheld such use restrictions, especially where the evidence as to the degree and nature of the change in the neighborhood was conflicting. (*Paschen v. Pashkow*, 63 Ill.App.2d 56; *Boschelli v. Villa Park Trust & Savings Bank*, 23 Ill.App.3d 82.) The point of significance here is that the trial court held no hearing and gave the State no opportunity to present evidence that the character of the area had not changed to such an extent that the restriction was now meaningless. In ruling on the question, without a hearing, the court acted improperly. *Exchange National Bank v. City of Des Plaines*, 127 Ill.App.2d 122; *Boschelli v. Villa Park Trust & Savings Bank*, 23 Ill.App.3d 82.

■■ In the course of his testimony, a witness for the defendant made what was undoubtedly a prejudicial and improper remark to the effect that in arriving at the just compensation to be paid for the property condemned he considered the fact that the State by the condemnation "is picking a family up and tearing them out by the roots." He then went on to indicate that the defendant was entitled to replacement cost for his property. The State immediately objected and asked that a mistrial be declared or at least the entire testimony of the witness be stricken as being reflective of an improper element of damages. The trial court complied with the request to the extent of admonishing the jury to disregard the language as to "picking a family up by its roots"; however, he did not strike the testimony otherwise. The failure to declare a mistrial or to strike the entire testimony is assigned as error. We are of the opinion that the court repaired the damage done by the prejudicial language in question as well as was possible by his admonishment to the jury and it was not of such gravity to call for a new trial. The question as to whether the entire testimony should have been stricken is more debatable. But, the testimony taken as a whole reflects a more factual basis for the witness's opinion as to value than the remark in question indicates. The testimony objected to was given on redirect examination after the witness had testified and had been cross-examined. The judge's direction to disregard the redirect testimony would have been ineffective. Again, it is a case of the relative impact of the testimony and we do not find the error, if any, of sufficient gravity to justify a new trial.

■■ Lastly, we consider the State's contention that the court erred in permitting the defendant's witness to testify to a value for the condemned property derived by dividing the square footage of two comparable sales by the selling price for these two comparable properties and multiplying the resulting cost per square foot by the square footage of the subject property. Since all these properties were improved and since there was no consideration given to any variations in the size, specifications or

value of the residences on the lots, it is quite clear that this was an improper basis for evaluating the condemned property. By using this method the defendant's witness came up with a value of $55,000 to $56,000 for the condemned property. The State's value was $28,000 to $30,000. No cases are cited by the defendant approving the method of valuation used here and we have found none. It is obviously a self-serving approach having no necessary relationship to the actual market value of the property involved. Speaking of the measure of just compensation for condemned property, our Supreme Court said, in *Housing Authority v. Kosydor,* 17 Ill.2d 602:

> "The value to the owner of the property taken or damaged for his particular purposes, or its value to the condemnor for some special use, have been rejected in favor of the 'market value' of the property at the highest and best use to which it is adapted. [Citations.] This objective standard has been adopted in most jurisdictions. * * *
>
> Market value is the price which property would bring if it were offered for sale by a willing seller to a willing buyer." (17 Ill.2d 602, 606.)

The court then went on to hold that in arriving at the just compensation to be paid for the condemned property, "* * * the constitution requires only that the owner obtain the fair market value of his property." (17 Ill.2d 602, 606.) In *Department of Public Works & Buildings v. Lotta,* 27 Ill.2d 455, our Supreme Court rejected a measure of value based on the sum of the values of the land and the buildings taken separately without reference to the actual market value of the property as a whole. The court said:

> "The measure of recovery for damage to private property caused by a public improvement is the loss which concerns the property itself. (*County Board of School Trustees v. Elliott,* 14 Ill.2d 440.) The fair market value of the land before the taking was a controlling factor in the determination. We have consistently held that the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. For this purpose, the whole does not necessarily equal the sum of the parts." 27 Ill.2d 455, 456.

While in the case before us it was not a question of valuing the land apart from the building, the square foot value approach did ignore the actual market value, which might be something quite different from the square foot figure of another somewhat comparable sale, due to differences in the improvement or the locations of the respective properties. ■■ Were we, therefore, persuaded that in this case the verdict of the

jury as to the value of the condemned property had been significantly affected by the evidence in question, it would present a serious question as to whether the verdict could stand. But, we are not so persuaded. The two valuations based on the square foot formula do not appear to have been accepted by the jury, which returned a verdict apparently based not on the square foot valuation calculated by the defendant's witness, but on the actual price for which a comparable property sold. Whereas the square foot formula presented by the witness would have obtained a result of about $1.95 per square foot for the comparable sale, which if applied to the area of the property condemned would have produced a figure of about $55,000, the jury actually awarded $45,000. This is the amount of actual dollars and cents derived from the comparable sale which was received in evidence. It is apparent, therefore, that the jury disregarded the square foot approach of the defendant's witness and used only the market value as reflected by the actual price received for the comparable sale. The erroneous evidence, therefore, does not appear to have prejudiced the verdict of the jury.

■■ While we have indicated in this opinion that several errors occurred in the trial of this case, the question to be decided is whether these errors so seriously prejudiced the State as to require a new trial, bearing in mind that the only question to be decided by the jury in a condemnation case is the amount of the just compensation to be paid for the taking of the property. We are of the opinion the jury's judgment was not seriously distorted by any of the errors we have noted. As was said in *Bruske v. Arnold*, 44 Ill.2d 132, 139 (quoting *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 118):

" '[T]he ultimate question on review is not whether a trial was scrupulously free from error, but whether there was error which operated to the prejudice of the appealing party or unduly affected the outcome below.' "

This is the practical test we are inclined to apply here. The State's range of values was $28,000 to $30,000; the defendant's $55,000 to $56,000. The verdict was $45,000 based on an actual comparable sale. The verdict was therefore well within the range of the evidence as to value. We are inclined to adopt here the well-known rule expressed by our Supreme Court in *City of Chicago v. Shell Oil Co.*, 29 Ill.2d 136:

"[W]here the jury's verdict is within the range of the evidence, and the jury has viewed the premises, the verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake." 29 Ill.2d 136, 138.

■■ We find no evidence of passion or prejudice having influenced the

jury's verdict and the amount of the verdict is certainly not such a departure from justice as to indicate a clear and palpable mistake.

We see no sufficient groumd to disturb the jury's verdict and the judgment of the trial court is therefore affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.