FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Petitioner-Appellant, v. VIVIAN M. KELLEY et al., Defendants-Appellees.

Second District   Nos. 77-483, 78-126 and 78-192 cons.

Opinion filed March 16, 1979.—Rehearing denied April 20, 1979.

310

Roger Ritzman and Roy L. Peregrine, both of Peregrine, Stime & Newman, of Wheaton, and Stephen D. Helm, of Nadelhoffer, Hennessey, Dommermuth & Brestal, of Naperville, for appellant.

William I. Ferguson, Keith E. Roberts, Timothy E. Cronin, and John R. MacKay, all of Donovan & Roberts, of Wheaton, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Forest Preserve District of Du Page County (the District) appeals from three separate condemnation judgments which have been consolidated for opinion. The Merchants National Bank of Aurora, under its Trust No. 2014 (Parsons), No. 77—483, the Bank of Naperville under its Trust No. 1116 (Scholz), No. 78—126, and Lawrence A. Gregory, No. 78—192, are defendants.

The District, on June 6, 1975, filed its petition to condemn approximately 2000 acres of land in unincorporated Du Page County. Included were the 160-acre Parsons property at the northwest corner of Book Road and 83rd Street about one mile from the boundaries of the City of Naperville; the 80.5-acre Scholz property located on the north side of 83rd Street about one-quarter mile east of the intersection of Book Road and 83rd Street, less than a mile south of the Naperville limits; and the 80.6-acre Gregory property located about one-half mile east of the intersection of Book Road and 83rd Street, with the southern boundary of the property fronting on 87th Street which is the boundary line between Du Page and Will Counties.

Several legal issues common to the appeals are first considered. These involve certain resolutions passed by the City of Naperville relative

to the extension of sewer and water facilities in the unincorporated and unannexed areas and the admission of evidence as to the reasonable probability of rezoning.

## The Naperville Resolutions

In 1970 the City of Naperville filed an application with the Illinois Environmental Protection Agency (EPA) for a Federal grant to develop a waste water treatment plant described as the Springbrook Treatment Plant. This application was reviewed by the Northeastern Illinois Planning Commission (NIPC) as a clearing house for Federal funds, and because the treatment plant was to be located within an area designated as prime open space under NIPC's plan, concern was expressed about the impact the plant might have on the future development in the area. In order to allay NIPC's fears and to assure approval of the grant Naperville in 1971 adopted two resolutions which provided that the City would neither accept annexation in nor supply municipal services to the area designated as "open space," including the area of the subject properties, for at least a period of 10 years, until 1981, without the prior approval of NIPC. According to the resolutions Naperville recognized the open space area as "not suitable" for urban development, and agreed to "continue to protest and discourage development in the area." The subject property owners filed a declaratory judgment suit in 1975 challenging the validity of the resolutions, but on March 8, 1976, chose to voluntarily nonsuit the direct attack and challenge the validity of the resolutions in the pending condemnation proceedings. On April 12, 1976, they filed a motion *in limine* requesting that the evidence relating to the Naperville resolutions be excluded from the condemnation proceeding on the bases that the resolutions were beyond Naperville's home-rule powers, involved an unauthorized attempt to exercise extraterritorial authority and were tantamount to inverse condemnation without compensation. The trial court granted the motion and excluded the resolutions.

In all three cases the District contends that the court in granting the motion permitted an improper collateral attack on the resolutions. It further argues that even if the resolutions could be attacked in an eminent domain proceeding, the presumption of validity was not overcome and further that an attack based on inverse condemnation can only be made where the condemning and zoning authorities are identical.

■■■ The trial judge did not state the particular reasons for his ruling. We are not persuaded that the resolutions are void as beyond Naperville's home-rule powers and subject to collateral attack for that reason, however, even though we recognize the rule that a void ordinance is subject to either direct or collateral attack whenever its authority is invoked in a judicial proceeding. (*Department of Public Works &*

*Buildings v. Exchange National Bank*, 31 Ill. App. 3d 88, 99 (1975).) A decision by a municipality not to accept land lying outside of its boundaries for annexation, and the further decision relating to the nonextension of the sewer and water facilities into that area appear to clearly pertain to the "government and affairs" of the municipality within the intendment of section 6(a) of article VII of the Illinois Constitution. The resolutions do not involve the exercise of extraterritorial jurisdiction; rather, they are an attempt by Naperville to avoid that exercise for a period of time. Further, a decision not to extend municipal services beyond a city's boundaries does not involve "inverse condemnation" in any reasonable sense. Thus the Naperville resolutions were not subject to collateral attack for voidness.

We also cannot support the ruling based on purely evidentiary grounds such as relevancy and the probativeness of the evidence. A prospective developer in the area of the subject properties in determining a price that he could economically afford to pay for the land would most naturally consider the question whether water and sewer services would be available from Naperville as the closest municipality or whether he would be required to get them from a more distant municipality such as Aurora or whether he would be forced to provide private facilities. By analogy to the consideration of a probability of rezoning, this evidence is significant "to the degree that such a change would result in an increase in value, in that a prospective buyer would take that factor into account in determining how much to pay for the land." (*Department of Conservation v. Aspegren Financial Corp.*, 72 Ill. 2d 302, 315 (1978).)[1] The resolutions were apparently still in force some four years after they were first enacted. This would further indicate to a prospective buyer that Naperville continued to be unwilling to extend the services in the area, a factor which the jury could take into account in determining the effect of the resolutions on the value of the subject properties.

■ We therefore conclude that the court erred in excluding the evidence of the Naperville resolutions. Errors on rulings in the admissibility of evidence do not necessarily require reversal unless the jury is misled and a verdict results which is against the manifest weight of the evidence. (*Forest Preserve District v. Kercher*, 394 Ill. 11, 24-25 (1946).) Therefore, whether the exclusion of the evidence of the Naperville resolutions had that result will be viewed in terms of the evidence discussed in each of the cases.

---

[1] There has been some reference in the arguments to the possibility that Aurora, which was some 2 miles away from the subject properties, would furnish municipal services to the area. However, there was no proof in the record that this was so. There was testimony in fact that Naperville and Aurora had entered into an agreement in which Naperville had promised not to extend municipal services to the territory west of Route 59 and Aurora had promised not to extend such services to the territory east of Route 59.

## The Reasonable Probability of Rezoning

The District argues in the three cases that the trial court erred in permitting valuation witnesses to predicate their opinions on the reasonable probability of rezoning.

Resolution of this issue requires a trial judge in a condemnation case to determine, as a preliminary matter, whether there is a reasonable probability of rezoning as to the subject properties. The applicable rules are not seriously in dispute. The test is whether the evidence indicates "flexibility" in making zoning changes without requiring that evidence of changes must be on parcels which are strictly "comparable" to the subject property. *Department of Public Works & Buildings v. Rogers*, 39 Ill. 2d 109, 114 (1968). See also *Department of Public Works & Buildings v. Franciscan Fathers*, 69 Ill. 2d 308, 315 (1977).

A review of the record in each of the cases leads us to conclude that there was sufficient evidence of flexibility on the part of the Du Page County zoning authorities to justify the admission of evidence as to reasonable probability of rezoning. John Enright testified that there was a rapid commercial and residential growth in the area (77—483; 78—126; 78—192); that nine planned unit developments (PUD's) had been approved in Naperville Township since 1970 (77—483); and that nine or 10 had been approved in neighboring Lisle Township since 1970 (77—483). There was other testimony that the county board had approved the Pebblewood PUD which contained well over 10% office and research use (77—483). James Dunn testified that the Du Page County Board had approved PUD's in various instances in Naperville and Lisle Township (78—126). Allan Efrussy, an employee of the Du Page County Regional Planning Commission testified that the Du Page County Board had issued about eight special use permits for PUD's in Naperville Township alone (78—126; 78—192). Thompson Dyke, a land planner, testified in each of the cases that he planned the Green Trails Development which was roughly 2000 acres in size as a PUD and that it was zoned by Du Page County (77—483; 78—126; 78—192). In sum, there was adequate evidence of a flexible zoning policy offered to support the trial court's decision to permit the valuation witnesses in each case to testify based on the reasonable probability of rezoning.

The District next argues that the evidence of valuation based on the hypothetical PUD should have been excluded because a development on each property was not economically feasible in light of the expressed policy of the neighboring cities of Aurora and Naperville. The District further contends that insufficient evidence was introduced to show the feasibility of a private water and sewer works on the hypothetical PUD.

As the District argues, the reasonable probability of rezoning is irrelevant unless it can be shown that there would have been a market

value for the highest and best use of the land theorized by the witnesses for the owners. (*Department of Conservation v. First National Bank*, 36 Ill. App. 3d 495, 500 (1976).) We find that the owners did meet their burden of showing that rezoning of the various properties to allow the building of the hypothetical PUD's would enhance the value at each site and that these could be built at a cost to be readily marketable. Testimony of Mr. Dyke and Mr. Enright supported the view in each of the cases that a PUD was both economically and legally feasible even if it became impossible or impractical to obtain sewer and water service from a nearby municipality. Even though the cost of such alternative construction was not detailed this would go to the weight of the testimony but would not render it incompetent. *Department of Public Works & Buildings v. Diggins*, 374 Ill. 11, 15-16 (1940).

Based on these conclusions applicable to all of the cases we proceed to review the issues in each case.

### The Parsons Farm (No. 77-483)

As previously indicated this is a 160-acre parcel at the northwest corner of Book Road and 83rd Street. It is a square with one-half mile frontage on Book Road and one-half mile frontage on 83rd Street. The Naperville Park District golf course is located on the southwest corner of Book Road and 83rd Street. The Fox Valley Shopping Center, a large regional center, is about 5000 feet to the northwest. The City of Naperville is about one mile away. The property contains a stone residence, a summer house and various outbuildings. There are two lakes on the premises. The well on the property has a pumping capacity of 300 gallons per minute. It is presently zoned R-2 in the Du Page County Ordinance. A PUD is not a permitted use on R-2 but may be granted as a special use under that classification. It must contain at least 40 acres and business uses on the premises under R-2 are restricted to uses permitted under B-1 and cannot occupy more than 10% of the gross land area of the development.

The District's valuation witness testified that the value of the Parsons' property as of the date of the filing of the petition for condemnation on June 6, 1975 was $7,350 per acre including all improvements but excluding growing crops; or an aggregate worth of $1,176,000. Mr. Enright, the landowners' witness, testified that in his judgment the property was worth on the valuation date $19,375 per acre or a total of $3,100,000. The jury verdict was $12,000 per acre or a total of $1,920,000.

In addition to the issues which we have previously discussed the District here claims that the court erred in excluding two transactions offered by it as comparable sales, and erred in admitting photographic evidence (defendants' exhibit No. 7). In addition, the District contends

that the court erred in refusing to grant a new trial on the basis of alleged prejudicial comments by the landowners' counsel in closing argument and further that the verdict was excessive and contrary to the weight of the evidence.

Before reaching these issues we must determine whether apart from any other question a new trial is required for the error we have found in the exclusion of the so-called Naperville resolutions. In this case the District's valuation expert testified that the Parsons farm was worth $7,350 an acre. Joseph I. Connelley, one of the District's witnesses, testified to the sale of a comparable tract at the northeast corner of 75th Street and Plainfield Road consisting of 194 acres (the Campanelli property) on October 4, 1973, for $10,485 an acre. Gerald Anderson, another District witness, testified to a claimed comparable sale of the Enck property involving 120 acres on January 27, 1973, for $9,000 an acre. Another witness testified to the sale of the Maitland property for $4,100 an acre. The landowners' expert as previously noted testified to a value of $19,375 an acre and the jury placed the value at $12,000 an acre. It should be first noted that both parties have agreed that if the District's valuation witness had been allowed to take into consideration the excluded Naperville resolutions he would have valued the property at $7,000 an acre rather than $7,350 an acre.

■■ It thus appears that if the court had permitted the Naperville resolutions to be admitted the appraisal value by the District's valuation witness would have been reduced by only $350 an acre which does not appear to be a substantial discrepancy. The jurors were afforded an opportunity to view the premises, which in an eminent domain proceeding is in the nature of evidence. (*County of Cook v. North Shore Electric Co.*, 390 Ill. 147, 150 (1945).) After viewing the premises the jury's valuation was well within the range of the competent evidence which was between $4100 an acre and $19,375 an acre. In arriving at the $12,000 an acre valuation it would appear from the whole record that the jury did properly weigh sufficient evidence presented by witnesses as to value on both sides in spite of the improper exclusion and therefore the error in excluding the Naperville resolutions is harmless and nonprejudicial. See *Trustee of Schools v. LaSalle National Bank*, 21 Ill. 2d 552, 557 (1961).

There is a further consideration which supports the view that the error was not prejudicial. If the evidence of the Naperville resolutions were admitted, evidence of the nearby Springbrook Treatment Plant would also have been admitted. It appears from the evidence that sewer lines to the plant had been constructed in close proximity to the subject properties. The evidence was excluded on the basis that the resolutions had been excluded. Further, the landowners' lawyer had indicated that if evidence of the resolutions were admitted he would seek to show that

Naperville, with NIPC's consent, had agreed to extend sewer and water services to annexed land in the "open space" area; and that the owner of this land intended to build a 131-home subdivision on the land so annexed. This evidence would have had the effect of showing that the Naperville resolutions were "flexible" and would have substantially diminished the impact of the resolutions even if they had been admitted.

The District complains that the evidence of the sale of the "Adwell property" and of the "Pearah property" was improperly excluded. The 154-acre Adwell property was sold for $7,650 an acre and the 80-acre Pearah property was sold for about $3,900 an acre. In each instance the exclusion was on the ground that the sales were tainted by knowledge on the part of both buyers and sellers of the District's condemnation plans for the area.

■■ The admission of comparable sales is a matter that lies within the sound discretion of the trial court which will not be reversed save for abuse. (See, *e.g.*, *Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.*, 29 Ill. App. 3d 145, 149-50 (1975).) Here, there was some evidence that the two proffered comparable sales had been tainted by knowledge of the District's condemnation plans. Further, the judge admitted evidence of three other comparable sales offered by the District. Under the circumstances the judge's action in excluding evidence of two other sales does not amount to an abuse of discretion. See *Department of Transportation v. Janssen*, 34 Ill. App. 3d 244, 248 (1975).

■■ The District next complains that the admission of defendants' exhibit No. 7, a series of photographs depicting major developments in the area of the Parsons' property, was error. The exhibit includes pictures of a shopping center, an office building, a fire station, the "Nabisco facility," a hospital and a secondary school. Since the photographs served to illustrate the testimony of several witnesses and aided the jury to understand and apply the evidence, their admission was a proper exercise of discretion. See *Brennan v. Leshyn*, 51 Ill. App. 2d 132, 139 (1964); *Lawson v. Belt Ry. Co.*, 34 Ill. App. 3d 7, 21 (1975).

■ Nor can we agree that the jury verdict of $12,000 an acre was excessive and contrary to the weight of the competent evidence. As previously noted it was within the range of the competent evidence. Further, it was only 14% greater than the sale price of the Campanelli property ($10,485 an acre) offered by the District as a comparable sale. It should be noted that the jury was called upon to decide the value of the Parsons property as of June 6, 1975, whereas the Campanelli contract was signed on October 4, 1973. The jurors, who were not required to set aside their experience in the affairs of life, could well have concluded that even the $10,485 figure offered by the District, adjusted for the high level of

inflation in 1974, would result in a figure of $12,000 or more as of June 6, 1975.

Where the jury's verdict is within the range of the evidence and it has viewed the premises, its verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake. (*City of Chicago v. Shell Oil Co.*, 29 Ill. 2d 136, 139 (1963).) The rule supports this verdict.

■■ Finally, the remark by defendants' counsel in closing argument that the Parsons were knowledgeable people who knew the value and potential of their property because they "with their toil and their perspiration and perseverance, made it the property that it is" does not constitute reversible error. Although improper, the objection to the argument was promptly sustained by the trial court. The trial court did not abuse its discretion in denying the District's post-trial motion for a new trial on the basis of this remark. See *Martin v. Kralis Poultry Co.*, 12 Ill. App. 3d 453, 464 (1973).

### The Scholz Farm (No. 78-126)

As previously noted the Scholz property is located one-quarter of a mile east of the Parsons farm and is less than a mile south of the city limits of Naperville. It is rectangular in shape with one-quarter mile frontage on 83rd Street. Here there was some evidence that water was available at "75th Street and Gardner" and sewer service was available at "Bailey and Vernon" which apparently are operated by the City of Naperville. As in the case of the Parsons property the Scholz property is zoned R-2 and subject to the same zoning restrictions for use as a PUD. In this case the District presented four valuation witnesses who testified to a value in the range of $5,625 an acre to $6,800 an acre. The owners' experts testified to values between $15,000 an acre and $17,000 an acre. The jury returned a verdict fixing the value of the property as of the June 6, 1975, petition date at $11,000 an acre, or a total of $885,000 for the 80.5-acre farm.

Again we preliminarily consider the prejudicial effect of the exclusion of the Naperville resolutions which we have found was error. Although much of the record in this case is essentially the same as in the Parsons case there are some differences. There by stipulation, as we have noted, the District's one valuation witness would have testified to a value of $7,000 an acre, rather than $7,350 an acre, if he were allowed to consider the two excluded resolutions. Here the District put four valuation witnesses on the stand. One of these, Jerry DeGrazia testified that the Scholz property was worth $5,625 an acre; William A. McCann testified that it was worth $6,000 an acre; Thomas M. Collins testified to a value of $6,500 an acre; and John Fry testified to a value of $6,800 an acre. There

appears to have been no stipulation or offer of proof by the District as to the effect that consideration of the Naperville resolutions would have had on the appraisals in this case. It would be difficult to assume or project, however, that the effect could have been any greater than the effect with relation to the Parsons property, that is, a difference of about 5%. We therefore conclude that the error in the exclusion of the Naperville resolutions was also harmless error in this case.

In addition, the District claims it was error in this case to permit the witnesses Dyke, Dunn and Enright to allegedly express an opinion that there was a reasonable probability or rezoning and to further give their view as to the precise type of zoning classification that would result. We agree that it is not proper to present a witness as an expert solely to testify to the probability of a particular rezoning. (*Department of Transportation v. Western National Bank*, 63 Ill. 2d 179, 185 (1976).) This court has recognized the difficulty of anticipating action of a legislative body and has discouraged the practice of permitting "prognostication on legislative policy." (*Park District v. Becker*, 60 Ill. App. 2d 463, 469 (1965).) However, we do not agree that the witnesses were called solely to express an opinion that there was a reasonable probability of rezoning or prognosticated the precise type of zoning classification that would result.

Mr. Dyke, a land planner, testified that a PUD was the highest and best use to be made of the Scholz property; and stated that the "reasonable probability of rezoning" was a factor that he took into account in forming his opinion as to the highest and best use. Mr. Dunn and Mr. Enright testified to the value of the Scholz property, grounded their appraisals on the view that a PUD was the highest and best use and stated that they took the "reasonable probability of rezoning" into account in determining fair market value. It thus does not appear that any of the three witnesses was offered "solely to testify to the probability of a particular rezoning" (63 Ill. 2d 179, 185), but rather referred to the probability for the purpose of explaining their valuation testimony and the factors that underlay their opinion of the highest and best use. Further, we fail to find support in the record for the claim that the witnesses purported to predict in any specific way the precise zoning that would have resulted if a land developer had sought to build a PUD on the Scholz property.

The District urges that several other errors require a new trial. Included is the argument that it was error to permit applications pending in the City of Naperville for annexations in the area of the subject property and to admit exhibits to support such testimony.

■■ We have held that the reasonable probability of annexation is admissible in an eminent domain case according to the same criteria which govern the admission of evidence of the reasonable probability of

rezoning. (*Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.*, 29 Ill. App. 3d 145, 151 (1975). See also *Department of Public Works & Buildings v. Kelly*, 40 Ill. App. 3d 896, 904 (1976).) Here, there appears to be insufficient foundation proof as a predicate for testimony of value based on reasonable probability of annexations to Naperville. There is nothing in the record that would suggest that the City of Naperville was likely as of June 6, 1975, to act favorably or not on a petition for annexation in this area or any evidence that would enable a jury to decide the issue based upon the testimony. Mr. Dyke, testifying for Scholz, referred to respondents' various exhibits, including an aerial photograph dated April 1976 depicting a 24-square-mile area with the subject property in the center, and a site analysis of the subject property and referred to areas which he said Naperville was considering annexing, or which were contemplated for annexation to the City of Naperville at the time of the condemnation. We consider the references to the fact that Naperville was considering annexations in the area to be error.

The landowners have argued that the question of annexation was first injected in the case by the District when its valuation witness, Mr. Collins, testified that in making his judgment as to the value of the Scholz property he took into consideration the annexation petitions that were pending as of June 6, 1975, before the Naperville council but did not indicate the exact nature of the petitions. Collins was asked on cross-examination the direct question whether it wasn't a fact "that as of June 6, 1975, there were proceedings then pending to extend the municipal boundary of Naperville to the west boundary and south of the property?" At this point the District's counsel objected and while the judge overruled the objection the question was never answered. We are of the opinion that the error is insubstantial and not reversible error. See, *e.g., Trustees of School v. LaSalle National Bank*, 21 Ill. 2d 552, 557 (1961).

■■ The District has also complained of the admission of respondents' exhibit No. 8, a map of the City of Naperville showing "projects that are in the process of or in the planning stages or have developed within the City of Naperville." The exhibit was admitted in connection with Enright's testimony explaining what projects existed or were in the construction or planning stages in Naperville as of June 6, 1975. The map, however, was dated April 1977 and the District objected on the ground of the later date. However, it appears that the exhibit was used only to illustrate the state of affairs as of June 6, 1975, and we hold that its use for this limited purpose was not error particularly since the exhibit did not go to the jury.

The District also argues that the court erred in allowing defendants' counsel to ask John Fry, one of the District's valuation witnesses, the value of the Parsons farm in the guise of asking the witness to relate a

conversation he may have had with the Parsons. After objection was overruled Fry testified that he told the Parsons that they would surely get $8,000 an acre for their property and might get as much as $12,000 an acre. The District argues that this improperly conveyed to the jury valuation evidence of another nearby tract of land which had not been qualified as a comparable. The defendant contends that the questions were put to Fry only for the purpose of discrediting his honesty as an appraiser.

■■ Evidence as to the value of dissimilar tracts of land cannot be introduced in an eminent domain case; this is so even where the evidence might serve to discredit a witness. (See, *e.g.*, *Forest Preserve District v. Chilvers*, 344 Ill. 573, 578 (1931). See also *Sanitary District v. Corneau*, 257 Ill. 93, 97-98 (1912).) We also conclude that the trial court erred in admitting the evidence of Fry's conversation with the Parsons in view of the underlying rationale in the cited cases that the probative value of such evidence in the way of discrediting the witness is clearly outweighed by its tendency to mislead the jury by in effect informing them that a nearby parcel not shown to be comparable was worth a certain value. Again, however, in the context of the whole record neither this error nor others noted were sufficiently prejudicial to require a new trial. See *Forest Preserve District v. Kercher*, 394 Ill. 11, 24-25 (1946).

### The Gregory Farm (No. 78-192)

The Gregory property is across the road from the Scholz property and one-half mile from the Parsons farm. It has a one-quarter-mile frontage on 83rd Street and a one-quarter-mile frontage on 87th Street. It also is zoned R-2.

The District called two witnesses to prove valuation. Jay T. Fitts testified that the highest and best use was as residential property and appraised the farm as of June 6, 1975, at $6,600 an acre. William A. McCann testified that the highest and best use was for single-family dwellings with private wells and septic systems and estimated the value at $7,000 an acre. For the landowners James Dunn testified that the highest and best use was as a PUD and estimated the value at $18,000 an acre. John Enright testified similarly as to the use and estimated the value at $15,000 an acre. The jury found the property to be worth $13,500 an acre.

In addition to the claims of error which we have considered as common to all of the cases the District claims error in various rulings on the admission and exclusion of evidence and also contends that the verdict is excessive and against the manifest weight of the evidence.

The District complains that four of the landowners's exhibits (No. 8, land use and zoning in a 24-square mile area; No. 9, an aerial photograph of the subject property; No. 10, a topographical map of the property; and No. 11, a hypothetical PUD for the Gregory property) improperly

contained a location map which showed, among other things, two "in process" annexations to the City of Naperville. One of the parcels lies on the south side of 87th Street "kitty-corner" from the southeast corner of the Gregory farm.

■■ The District does not seriously question the fact that annexations in the area would be taken into account by a willing buyer or seller and would affect the opinions as to land values. In fact, two of the petitioners' witnesses, Fitts and McCann, testified that they considered pending annexations in determining the fair market value of the property. The thrust of the District's complaint however is that the defendants failed to introduce foundation evidence of any overt actions supporting the fact that the annexations were actually "in process" and thus, they argue, the jury was left to speculate and was misled by a collateral reference into assuming that the specific annexations were probable. The inherent vice of this, they argue, is that this would place the subject property very close to Naperville and would improperly permit the jury to speculate as to a greater reasonable probability of rezoning of the specific property in spite of the fact that there was no supporting evidence to that effect. We conclude that the pending applications could be generally relevant if proper supporting proof had been offered. The admission here without further proof was improper. But under all of the circumstances it was not a substantial error which could be said to have misled the jury and resulted in a verdict manifestly against the weight of the evidence. *Forest Preserve District v. Kercher*, 394 Ill. 11, 24-25 (1946).

The trial court excluded evidence of the sale of three supposedly "comparable" tracts of land, to wit, the Pearah, Adwell and Schillinger properties. As we have previously indicated the court acted within its proper discretion in excluding these sales particularly when it also permitted four other sales offered by the District to go to the jury as comparable.

We have also considered other rulings claimed by the District as errors. These relate to the refusal to permit the District to show that there was no complete plan showing feasibility of the hypothetical PUD on the Gregory property; to the refusal of an offer of proof by the District to show the "secret" criteria used in the Du Page County offices in passing on special use permits and in permitting the landowner to introduce into evidence a series of photographs (defendant's exhibit No. 7) showing major structures in the general surrounding area illustrating growth patterns. We find no substantial errors in these rulings.

Finally, we are not persuaded that the award to Gregory is excessive. As previously noted one of the District's witnesses testified that the Gregory farm was worth $7,000 an acre; another $6,600 an acre; while one of the landowners' valuation witnesses estimated the property to be worth

$15,000 an acre and another $18,000 an acre. The jury also heard evidence of "comparable sales" at $4,000 an acre, $4,100 an acre, $7,600 an acre and $9,000 an acre. Its verdict of $13,500 an acre was well within the range of the evidence and keeping in mind that the jury had an opportunity to view the premises the verdict does not evince "passion, prejudice or clear and palpable mistake." Thus, it cannot be regarded as "excessive." *City of Chicago v. Shell Oil Co.*, 29 Ill. 2d 136, 138 (1963).

For the reasons we have stated the judgments in Nos. 77-483, 78-126 and 78-192 are each affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.