(No. 49181.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILD-INGS, Appellant, v. AN ASSOCIATION OF FRANCISCAN FATHERS OF THE STATE OF ILLINOIS *et al.,* Appellees.

*Opinion filed Nov. 30, 1977.—Rehearing denied Jan. 26, 1978.*

310

William J. Scott, Attorney General, of Springfield (Frank S. Righeimer, Jr., and Leo N. Cinquino, Special Assistant Attorneys General, of Chicago, of counsel), for appellant.

James A. Dooley and James D. Murphy, Jr., of Chicago, for appellee an Association of Franciscan Fathers of the State of Illinois.

MR. JUSTICE CLARK delivered the opinion of the court:

This is an eminent domain action (Ill. Rev. Stat. 1969, ch. 121, par. 4—501) filed by the Illinois Department of Public Works and Buildings (hereafter Department) against An Association of Franciscan Fathers of the State of Illinois (hereafter Franciscans), a corporation. At trial in late 1972, the Du Page County circuit court permitted the Franciscans' witnesses to give testimony on the valuation of the Franciscans' condemned property based on the reasonable probability of rezoning. The court refused, however, to give an instruction which would have expressly allowed the jury to consider the reasonable probability of rezoning in reaching a determination of the compensation due. The jury verdict found just compensation to be

$196,560 for the land taken, approximately the amount of the highest appraisal given by one of the Department's witnesses, and $22,575 for damage to the remainder. The appellate court reversed and remanded on this issue. On denying the Department's petition for rehearing, the appellate court filed a supplemental opinion and allowed the Department's motion for a certificate of importance, pursuant to Supreme Court Rule 316 (58 Ill. 2d R. 316). (44 Ill. App. 3d 49.) We affirm the appellate court.

The petition to condemn property, owned by the Franciscans and located at the southwest corner of 31st Street and Route 83 (Federal Aid Route 102) on the outskirts of Oak Brook, Illinois, was filed April 28, 1970, to facilitate the construction of an overpass and highway interchange at that intersection. A month and a half later, the Du Page County circuit court entered a preliminary order granting the motion for the immediate vesting of title in the State (Ill. Rev. Stat. 1969, ch. 47, par. 2.1 *et seq.*) and finding just compensation to be $196,500 with no damage to the remainder. (Under quick-take proceedings, the court makes a preliminary finding of just compensation which "shall not be evidence" and "shall not be disclosed" to a jury in the further condemnation proceedings (Ill. Rev. Stat. 1969, ch. 47, par. 2.2).) The Franciscans were given leave to file a cross-petition for damage to the remainder. On July 10, 1970, the Franciscans filed the cross-petition and a notice of appeal. The appellate court, in January 1972, dismissed that appeal. (3 Ill. App. 3d 503.) In April 1972, the Department filed a petition to condemn the access rights of the Franciscans along Route 83, which was designated a freeway. The two petitions—for the corner and for the access rights—against the Franciscans were consolidated by court order, but that order was later vacated. It appears, as the appellate court found, that the question of access rights was not before the jury, although a review of the record shows that some

witnesses had considered this in their testimony as to damage to the remainder. The trial court may wish to consider that in order to serve the orderly administration of justice and to avoid additional costs, the two petitions be consolidated and the question of access rights be considered as well on remand.

The subject property consists of 9.828 acres of the Franciscans' 235 acres, the whole of which is bounded by 31st Street on the north, Route 83 on the east, 35th Street on the south, and Midwest Road on the west; is zoned "Institutional"; and is used solely for religious and educational purposes. The zone classifications for other property in the immediate vicinity are: across 31st Street and also comprising the northwest corner of 31st Street and Route 83, R—3 and R—4 (residential); the northeast corner, B—1 (business); across Route 83 and also comprising the southeast corner of 31st Street and Route 83, R—2 (single-family residence; this is also the northeast corner of 35th Street and Route 83); the southeast corner of 35th Street and Route 83, R—1 (single-family residence); across Midwest Road, R—1 and R—2; and the northwest corner of Midwest Road and 31st Street, no zoning classification. To the south of the Franciscans' land, across 35th Street, is Westmont.

The appraisal witnesses for the Department presented estimates of the value of the subject property, based on fair market value for the highest and best use, that were lower than the estimates of the owner's witnesses. The valuations of the Department's witnesses ranged from $157,000 to $196,500. They also testified that the highest and best use of the institutionally zoned property, at the date of filing of the petition, would have been residential. Witnesses for the Franciscans valued the taken property from $608,000 to $1,100,000, with estimates of damage to the remainder ranging from $340,000 to $550,000. Witnesses for the owner generally felt that the highest and

best use, not permitted under the zoning then in effect, would be for business or commercial uses or for the uses permitted under ORA (office and research). They also testified that their valuations were based on a reasonable probability of rezoning. The Department contested this, but the trial court, having determined there was sufficient evidence of a likely change in zoning, permitted the valuation testimony of the owner's witnesses.

Under the 1970 Constitution (art. I, sec. 15), the State, of course, has the prerogative of taking private property for public use, provided just compensation is given. Just compensation is the fair market value of the property at its highest and best use on the date of filing of the petition. (*City of Chicago v. Giedraitis* (1958), 14 Ill. 2d 45, 49; *Housing Authority v. Kosydor* (1959), 17 Ill. 2d 602, 606; 56 Ill. B.J. 864, 872-73 (1968); *cf. Department of Transportation v. Shaw* (1977), No. 48524.) Until this court decided *Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109, it had never expressly held whether or not the reasonable probability of rezoning could be considered in assessing the fair market value of taken property. Other jurisdictions had, for some years, allowed valuations based on probable rezoning. *E.g., Long Beach City High School District v. Stewart* (1947), 30 Cal. 2d 763, 185 P.2d 585, 173 A.L.R. 249; *State v. McMinn* (1960), 88 Ariz. 261, 355 P.2d 900; *State v. Motor Freight Terminals, Inc.* (1960), 57 Wash. 2d 442, 357 P.2d 861. (For a complete annotation, see Annot., *Zoning as a Factor in Determination of Damages in Eminent Domain,* 9 A.L.R.3d 291 (1966); see also 4 Nichols, Eminent Domain sec. 12.322(1) (rev. 3d ed. 1976).)

In *Rogers,* this court approved the reasoning of *Park District v. Becker* (1965), 60 Ill. App. 2d 463, and held that "the reasonable probability of rezoning is a proper factor to consider in establishing value." (39 Ill. 2d 109,

113.) Recently, *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 185, strengthened that rule:

"It is proper to base value upon the highest and best use permitted, not only under existing but also under other zoning classifications where there is reasonable probability of the granting of such zoning in the near future. The burden of proof of the reasonable probability of rezoning is on the landowner. \*\*\* If there is sufficient evidence for a court to make a determination that the reasonable probability exists, then the witnesses may testify as to value based on such probability."

We believe there was sufficient evidence for the trial court to make the initial determination that valuation witnesses could consider the reasonable probability of rezoning in the instant case. There was evidence that the "Institutional" zoning classification attached to the Franciscans' property was provisional. Oak Brook, which neither party disputed was quickly growing and increasingly attractive to home buyers and business interests, had already approved three of five requests for rezoning during the period 1967-72. The 1966 Oak Brook zoning ordinance had been rewritten in 1972. This would indicate a flexible zoning policy; and where a flexible zoning policy is shown, there is sufficient basis for introducing "evidence in support of the reasonable probability of the rezoning theory." (See *Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109, 114.) Moreover, the location of the condemned property, at the corner of a busy intersection, would make it desirable for commercial uses not then permitted under the zoning laws.

We find error in the trial court's refusal to instruct the jury that it could consider the reasonable probability of rezoning in its determination of just compensation. The

court was guided, not unreasonably, by the recommendation in section 300.85 of the Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (hereafter IPI Civil): "The committee [on jury instructions] recommends that no instruction be given on the effect of a possible change in zoning." As Supreme Court Rule 239 (58 Ill. 2d R. 239) makes clear, however, where an IPI Civil instruction "does not accurately state the law" or when IPI Civil "does not contain an instruction on a subject on which the court determines that the jury should be instructed," the court should give a proper instruction. "In a condemnation proceeding of private property for public use, the court must give accurate rulings on evidence and correct instructions to the jury." *City of Chicago v. Harbecke* (1951), 409 Ill. 425, 428; accord, *Forest Preserve District v. Draper* (1944), 387 Ill. 149, and *City of Chicago v. Lederer* (1916), 274 Ill. 584.

The trial court's determination that there is sufficient evidence of a reasonable probability of rezoning is not a finding of law. Rather, "it is for the jury, in considering the weight to be given to valuation testimony based upon the reasonable probability of rezoning, to determine whether there was a reasonable probability of rezoning, and if so, its effect on the fair market value of the property," as the appellate court below said. 44 Ill. App. 3d 49, 60.

We do not believe that, in the case at bar, that was clear to the jury. The Department contends that the reasonable probability of rezoning is really nothing more than a standard for the admission of evidence. It is more than that. Reasonable probability of rezoning was the theory of the Franciscans' case—just as the theory of the Department's case was that presented to the jury in the court's instruction (based on IPI Civil No. 300.84):

> "When I use the expression 'Highest and Best Use' of property I mean that use which would give the property

its highest cash market value on April 28, 1970. This may be the actual use of the property on that date or a use to which it was then adaptable and which could be anticipated with such reasonable certainty that it would enhance the market value on that date."

For the jury to have fairly considered the views of the parties and to have balanced the various valuation estimates, it should have been instructed on the reasonable probability of rezoning as well.

In *People ex rel. Department of Public Works v. Donovan* (1962), 57 Cal. 2d 346, 369 P.2d 1, 19 Cal. Rptr. 473, the California Supreme Court found it prejudicial error not to have given the owner's tendered instruction on the reasonable probability of rezoning. The trial court in *Donovan* had given an instruction which precluded jury consideration of the owner's theory of a change in zoning and the testimony of the owner's valuation witnesses: " '*** as a matter of law, in this case the Court instructs the jury that at all times referred to in the evidence in this case the only lawful use that could be made of this property was for single family residence.' " (57 Cal. 2d 346, 350, 369 P.2d 1, 3, 19 Cal. Rptr. 473, 475.) The California high court held "there was no justification for an instruction which, upon a reasonable construction thereof, prevented the jury from considering defendant's theory"; the "jury might well have concluded from the instruction given that the only use which could be considered in evaluating defendant's property was a present lawful use." (57 Cal. 2d 346, 354, 353, 369 P.2d 1, 5, 19 Cal. Rptr. 473, 477, 476.) (The Supreme Court in *Donovan* did suggest that a trial court word an instruction so as to avoid the conclusion that it had found, as a matter of law, there was a reasonable probability of rezoning.)

Other cases from other jurisdictions suggest that, although a jury is not bound to decide that the reasonable probability of rezoning will enhance the value of con-

demned property, once such evidence is allowed in, the jury should be carefully instructed that it may consider that evidence. *E.g., Dolezal v. City of Cedar Rapids* (Iowa 1973), 209 N.W.2d 84, and *City of Austin v. Cannizzo* (1954), 153 Tex. 324, 267 S.W.2d 808.

We are not convinced that the Franciscans' tendered instruction should have replaced the instruction actually given (which was IPI Civil No. 300.84, quoted above). Like the appellate court, we feel an appropriate instruction should have been given in addition to IPI Civil No. 300.84 and with proper reference to it because it accurately states the law as far as it goes. (See *Housing Authority v. Kosydor* (1959), 17 Ill. 2d 602, and *Illinois Light & Power Co. v. Bedard* (1931), 343 Ill. 618.) Nor are we convinced that the Franciscans' tendered instruction, as it stood, would have been clear to the jury. The owner's proffered instruction was:

> "When I use the expression 'Highest and Best Use' of property I mean that use which would give the property its highest cash market value on April 28, 1970.
> This may be a use to which it was then adaptable and which could be anticipated with such reasonable certainty that it would enhance the market value on that date, including the reasonable probability of rezoning."

The last phrase, "including the reasonable probability of rezoning," although it is something decisively different from or in addition to what is already in IPI Civil No. 300.84, is simply superimposed on No. 300.84. There is no indication as to what antecedent in the instruction properly "includes" the concept, or as to how or for what purpose the jury should consider or apply it. As the tendered instruction of the owner stands, there is confusion resulting from the use of, if not outright conflict between, the words *certainty* and *probability*. A separate paragraph—preferably a separate tendered instruction—on the reasonable probability of rezoning could have cured this confusion.

Nevertheless, the court should have given an instruction on the reasonable probability of rezoning, possibly one of those offered by the Department's counsel but refused by the court.

The prejudicial error of failure to give an instruction on the reasonable probability of rezoning was aggravated by the closing argument of counsel for the Department. Counsel added to the confusion of what the jury could or should have considered when he told the jury that the court would instruct it that only "a use *** within a reasonable certainty" could be the basis for the jury's determination of the highest and best use of the condemned property. This, coupled with the failure to give an instruction on the reasonable probability of rezoning, effectively precluded jury consideration of the owner's theory of the case. See *City of Chicago v. Martin* (1962), 26 Ill. 2d 274, 277, which held that "the misleading instruction together with the improper argument to the jury deprived defendant of a fair and impartial trial" in an eminent domain action.

Finally, the Department's argument that the owner failed to tender a separate instruction on the reasonable probability of rezoning and therefore was barred from "complaining on appeal that such an instruction was not given" is without merit. The owner's tendered instruction, although it is IPI Civil No. 300.84, has a crucial difference: it contains the additional clause, "including the reasonable probability of rezoning." In deference to IPI Civil No. 300.85, the trial court made clear its decision not to consider any instruction on the reasonable probability of rezoning. Once the tendered instruction was refused, then, it would have been futile to offer another, entirely separate instruction on the reasonable probability of rezoning.

The owner raises other issues, not considered by the appellate court, which we find it unnecessary to reach at

320

this time. For the reasons above, the appellate court judgment is affirmed.

*Judgment affirmed.*

MR. JUSTICE DOOLEY took no part in the consideration or decision of this case.