RICKY MOORE, SR., Indiv. and as Special Adm'r of the Estate of Ricky Moore, Jr., Deceased, Plaintiff-Appellant, v. DOUGLAS SWOBODA *et al.*, Defendants-Appellees.—RICKY MOORE, SR., Indiv. and as Special Adm'r of the Estate of Ricky Moore, Jr., Deceased, Plaintiff-Appellee and Counterdefendant-Appellee, v. DOUGLAS SWOBODA *et al.*, Defendants-Appellants and Counterplaintiffs-Appellants (Cathy Moore, Counterdefendant-Appellee).

Fourth District Nos. 4—89—0957, 4—90—0044 cons.

Opinion filed April 23, 1991.

Edward J. Kionka, of Carbondale, and Eileen M. O'Sullivan, of Jerome Mirza & Associates, Ltd., of Bloomington, for Ricky Moore, Sr.

Edward M. Wagner, of Heyl, Royster, Voelker & Allen, of Urbana, for Douglas Swoboda and Stokely USA, Inc.

JUSTICE STEIGMANN delivered the opinion of the court:

This litigation has its origin in a tragic accident that occurred on September 8, 1985, when a truck driven by defendant, Douglas Swoboda, struck a dirt bike driven by Ricky Moore, Jr. (Ricky). Ricky's friend, Kirby Torbet (Kirby), was a passenger on the dirt bike at the time of the accident. Ricky and Kirby died from the injuries sustained in the collision. The truck Swoboda was driving at the time of the collision was owned by his employer, defendant Stokely USA (Stokely), and Swoboda was driving the truck in the course of his duties as a Stokely employee. Ricky's father, plaintiff Ricky Moore, Sr. (plaintiff), owned the dirt bike involved in the collision.

Plaintiff, as special administrator, brought a survival action against both Swoboda and Stokely on behalf of Ricky's estate (Ill. Rev. Stat. 1985, ch. 110, par. 2—1008(b); ch. 110½, par. 27—6) for Ricky's personal injuries and subsequent death. Plaintiff also sought damages for wrongful death (Ill. Rev. Stat. 1985, ch. 70, pars. 1 through 2.2). Finally, in his individual capacity, plaintiff sought recovery for medical and funeral expenses (Ill. Rev. Stat. 1985, ch. 40, par. 1015).

Allegations common to all counts of plaintiff's complaint regarding Swoboda were that he (1) drove at an unreasonable and improper speed under the circumstances; (2) drove at a speed that endangered Ricky; (3) failed to reduce his speed when a special hazard existed with respect to other traffic; (4) failed to exercise proper precautions upon observing a child; (5) failed to keep the truck he was driving under control; (6) failed to keep a proper lookout for children near the highway; (7) failed to apply the truck's brakes to avoid a collision with Ricky; (8) drove the truck completely off of the road and continued driving off the road for at least 80 feet before colliding with Ricky; and (9) failed to take "proper and necessary action" to avoid a collision with the dirt bike although there was sufficient time to do so. All allegations were grounded in negligence.

In defendants' answer, they denied any negligence on their part. As an affirmative defense, defendants requested that any verdicts against them be reduced in proportion to Ricky's comparative negligence. In addition, defendants filed counterclaims against plaintiff and Ricky's mother, Cathy Moore (Cathy), as contributing joint tortfeasors (Ill. Rev. Stat. 1985, ch. 70, pars. 301 through 305). These counter-

claims, directed to the counts pertaining to Ricky's estate's claim and plaintiff's medical and funeral expenses, alleged that negligence on the part of Ricky's parents was a contributing cause of Ricky's injuries and death. Specifically, defendants alleged that Ricky's parents negligently breached their duties to supervise his activities because they (1) allowed Ricky to operate the dirt bike off their premises and on a rural highway; (2) allowed Ricky to operate the dirt bike with a passenger on board; (3) allowed Ricky to operate the dirt bike without a helmet or other protective gear; and (4) failed to adequately instruct and educate Ricky on the proper use of the dirt bike, the carriage of passengers, and the use of safety gear. Defendants did not file counterclaims for contribution with respect to the wrongful death counts of the complaint.

At trial, the jury assessed total damages at $500,000, apportioned as follows: (1) $170,000 for Ricky's pain and suffering after impact and prior to death; (2) $163,500 each to plaintiff and Cathy for their pecuniary loss for Ricky's wrongful death; and (3) $3,000 for the family's medical and funeral expenses. The jury found that 10% of the negligence which proximately caused the injuries was attributable to "plaintiff [sic Ricky]." The jury also found Ricky's parents were each 5% contributorily negligent on defendants' counterclaims for contribution.

Following a hearing on defendants' post-trial motion, the trial court entered an order which (1) upheld the estate's recovery for personal injury and the family's recovery of expenses, and (2) denied the request for a ruling that the evidence was insufficient to support the jury's findings of negligence. However, the court allowed defendants' motion for a new trial on the wrongful death counts because the jury was not instructed that a contributorily negligent beneficiary may not share in amounts recovered in a wrongful death action. The court stated that the verdicts returned did "not clearly indicate what the jury concluded in this regard."

The court then entered judgments against defendants in the amounts of $153,000 on the estate's survival action and $2,700 for the family's expenses. On the counterclaims for contribution, the court entered separate judgments of $7,650 each against both plaintiff and Cathy Moore to offset the estate's damage award and $135 each in favor of defendants on plaintiff's award for family expenses.

Separate petitions for leave to appeal by plaintiff (No. 4—89—0957) and defendants (No. 4—90—0044) were granted by this court. See 134 Ill. 2d R. 306.

On appeal, plaintiff challenges only that portion of the trial court's order which granted a new trial on the wrongful death counts. Plaintiff contends that any impropriety in instructing the jury on these counts was the result of errors or omissions attributable to defendants. Alternatively, plaintiff contends the jury was properly instructed. Defendants in their appeal contend that the trial court should have granted motions for directed verdicts and judgments notwithstanding the verdicts on all counts in defendants' favor. Alternatively, defendants contend the verdicts are against the manifest weight of the evidence or the trial court should have granted a new trial on all counts because of numerous trial errors. We begin by considering plaintiff's claim of error.

### I. JURY INSTRUCTIONS ON WRONGFUL DEATH

Plaintiff contends the circuit court erred in ordering a new trial on the wrongful death counts. The court took this action because the jury was not instructed that contributory negligence is a complete bar to recovery of damages for pecuniary injuries on a wrongful death claim. Plaintiff contends that because defendants did not submit a proper instruction on this aspect of the case, they have waived any error committed in failing to properly instruct the jury. Defendants respond that plaintiff is responsible for the error committed because he objected to a proper instruction defendants submitted which stated that the contributory negligence of Ricky's parents barred their recovery of damages for pecuniary injuries on the wrongful death counts.

Prior to trial, defendants were granted leave to amend their affirmative defenses and counterclaims for contribution "so that if any percentage of negligent conduct is assessed against any of the above-named individuals as beneficiaries and next of kin, namely, RICKY MOORE, SR., [and] CATHY MOORE *** that any such percentage assessed act as a total bar from said individuals' ability to recover any monies or damages in this cause. *Ralston v. Plogger*, 132 Ill. App. 3d 90, 476 N.E.2d 1378 (4th Dist. 1985)."

Although there was some confusion at the instructions conference which preceded closing argument over whether the court had permitted this amendment, a docket entry and a statement by the trial judge during the conference clearly indicate the amendment was allowed. No one challenged the propriety of that ruling or requested vacatur of that order in the post-trial proceedings.

We conclude the issue was properly pleaded by defendants to the extent it applied to the wrongful death counts. We note, parentheti-

cally, that Ricky's parents' contributory negligence would not, of course, bar them from all recovery on the family expense claim.

We have examined, as have the parties, the numerous instructions given in this case. While we agree that the issues to be tried to the jury were complex, it is apparent that many of the instructions given in this case were neither clear nor accurate. An elaborate discussion of the various infirmities contained in the instructions as they apply to the wrongful death counts need not detain us, however. We conclude that the failure to properly instruct the jury as to the effect of Ricky's parents' contributory negligence on their right to recover pecuniary loss on the wrongful death counts justifies setting aside the jury's verdict on the wrongful death counts.

In the various instructions given which bore on this point, the jury was, in substance, instructed that a finding of contributory negligence on the part of plaintiff or Cathy required a reduction of damages awarded under the wrongful death counts in the manner stated by other instructions. These other instructions called for the jury to reduce plaintiff's and Cathy's damages by the proportion or percentage of contributory negligence found attributable to each of them.

■■ These instructions were not correct. Contributory negligence on the part of plaintiff or Cathy would have barred them respectively from sharing in any pecuniary damages recovered for wrongful death. In this case, the jury found each of Ricky's parents contributorily negligent to the extent of 5%. Plaintiff raises no questions concerning the propriety of that finding. Accordingly, we conclude the trial court did not err in vacating judgment against defendants on the wrongful death counts.

■■ Plaintiffs contend, however, that defendants have waived this issue either by failing to make a proper objection to the instructions which were given or to submit a correct instruction on this issue. We disagree.

Defendants submitted instruction No. 19, which the court refused after plaintiff made a nonspecific objection. That instruction read as follows:

"The contributory negligence of RICKY MOORE, SR., and/or CATHY MOORE, if any, would make them, or either of them, liable in contribution for the damages assessed in Counts I and IV [recovery for the family expenses].

The contributory negligence of RICKY MOORE, JR., if any, does not bar the estate's recovery under Counts II and V [wrongful death]; however, the total amount of damages to

which RICKY MOORE, SR., would otherwise be entitled is reduced in proportion to the amount of this negligence.

The contributory negligence of the parents, RICKY MOORE, SR., and CATHY MOORE, if any, does not bar the estate's recovery under Counts II and V; however, in any award you may make under Counts II and V, you may not include damages for any pecuniary injuries suffered by the parent or parents found to be negligent; furthermore, the parent or parents found to be negligent would be liable in contribution for the damages assessed in Counts II and V."

(The words in brackets were *not* included in this instruction.) The only instruction included in the Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (IPI Civil 2d), which was current when this case was tried and relates to the effect of contributory negligence on the right of a party to recover damages in a wrongful death action, is the following:

"If you find that [the widow] [_____]
(one of the next of kin)
negligently contributed to cause the death of the decedent, the negligence of that person does not bar recovery by the plaintiff, but in any award you may make you may not include damages for any pecuniary injuries suffered by [her] [_____]." (IPI Civil 2d No. 31.08, at 172.)
(one of the next of kin)

Although Illinois Pattern Jury Instructions, Civil (3d ed. 1990) (IPI Civil 3d) has now superseded IPI Civil 2d, the current version of this instruction is materially indistinguishable from its predecessor and contains the following statement on the use of the instruction:

"This instruction should not be used in a survival action [(an action that survives the decedent)]. If a wrongful death and a survival action are tried together, a limiting clause such as 'As to the claim for wrongful death' or 'Under Count ____' should be added at the beginning of the paragraph." IPI Civil 3d No. 31.08, Notes on Use, at 31—21.

Although plaintiff argues that defendants' instruction No. 19 is confusing and a non-IPI instruction, we conclude the trial court erred in refusing to give the instruction. Although we should not be heard to condone the use of non-IPI instructions when a suitable pattern instruction is available, the instruction tendered by defendants accurately distinguishes the effect of a party's contributory negligence on the right to recover pecuniary damages for wrongful death, and its language is materially consistent with the otherwise applicable IPI instruction. Because of the significance of this issue, it was error for

the court to refuse defendants' instruction, albeit a non-pattern one, when no other instruction adequately or accurately advised the jury of the law concerning the effect of the contributory negligence of Ricky's parents on any award for wrongful death.

■ We conclude, however, that a new trial as to the wrongful death counts is not required. Instead, the jury's finding that defendants are entitled to contribution from Ricky's parents, considered in conjunction with the actual judgments reflecting their contributory negligence entered against plaintiff and Cathy, provide an adequate basis for reversing the trial court's order for a new trial on the wrongful death counts.

The instructions relating to the counterclaims for contribution clearly suggested that negligence on the part of plaintiff and Cathy was a prerequisite to awards of contribution against them. The jury found each of Ricky's parents to be negligent to the extent of 5% and, as we have indicated, plaintiff does not contest that finding. Since this uncontested finding of negligence as to both parents bars their recovery for pecuniary injuries resulting from Ricky's wrongful death, and the record contains nothing which suggests that any party other than Ricky's parents would be entitled to share in a wrongful death award, a new trial is unnecessary.

The fact that the jury was not informed that contributory negligence on the part of Ricky's parents would bar them from recovery does not provide a convincing basis for holding that a new trial is required. We recognize that the "blindfold rule," which precludes courts from informing a jury of the effect of their findings as to contributory negligence, is not followed in most jurisdictions. One of the most cogent arguments in support of the view that a jury should be informed of the effect of its apportionment of fault is that a one percentage-point difference in the fault apportionment sometimes makes the difference between that party obtaining a recovery or recovering nothing at all. The failure to inform the jury of the effect of its findings in these circumstances may result in a decision shaped by a misimpression of the law. See 3 R. Clifford & A. Best, Comparative Negligence §18.30[3], at 18—68 through 18—71 (1991).

In the present case, however, a one percentage-point difference in the jury's assessment of the parties' negligence was not crucial to the outcome. Any negligence on the part of plaintiff and Cathy Moore precludes them from recovering on the wrongful death counts, and the jury obviously concluded that both parents were negligent to some extent. Since no judgment for plaintiff on the wrongful death counts could ever stand, retrial is unwarranted.

Plaintiff urges us to hold that the doctrine of comparative negligence as announced in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, is also applicable to wrongful death actions and, for this reason, the jury was properly instructed notwithstanding our previous discussion. This court rejected this specific contention in *Ralston* (132 Ill. App. 3d at 97-98, 476 N.E.2d at 1383), and plaintiff's arguments do not convince us that we should overrule that decision.

## II. Sufficiency Of The Evidence

In their appeal, defendants initially contend they should have been granted directed verdicts, or judgments *n.o.v.*, because there was insufficient evidence to support the jury's findings of negligence on their part.

### A. *Facts*

The evidence presented at trial established that on the morning of the accident (a Sunday), Ricky decided to visit his Little League coach, Phil Trego, who lived in a rural area near Hoopeston. Trego's residence was located about one-half mile west of Illinois Route 1, about 150 feet north off of Thompson Road.

The section of Thompson Road on which the Trego residence was located was about 22 feet wide. Cornfields, with standing crops, lined both sides of the road for the first part of the half mile between Route 1 and the Trego residence. After the cornfield on the north side of the road was a large grassy area which comprised the Tregos' front yard. This area was approximately 120 to 150 feet wide.

With his friend Kirby on the back of his dirt bike, Ricky drove to Trego's residence. It was a clear, warm day. When the boys arrived at the Trego home, Phil Trego was not at home. They visited briefly with his wife, Penny Trego, and left shortly before noon.

Swoboda testified that at about the same time, he was driving west on Thompson Road in a pickup truck owned by Stokely. Swoboda stated that he was a raw products manager for Stokely and his job duties included visiting various farms in the area to oversee the harvesting of crops that Stokely had purchased. During the days immediately preceding the fatal collision, Swoboda had been working long hours, seven days per week, and had worked 14 hours on each of the preceding two days. On the day of the accident, he started work at 6 a.m. Swoboda testified that he stopped at the stop sign at the intersection of Route 1 and Thompson Road and then continued west in the direction of the Trego residence.

Swoboda testified that he first saw the dirt bike on which Ricky and Kirby were riding when it was on or near the Tregos' driveway, about 20 to 25 yards from the road. The dirt bike was heading south at that time toward Thompson road. According to Swoboda, he was driving 45 to 50 miles per hour when he reached the west edge of the cornfield located just east of the residence. Swoboda's testimony indicated that after he passed the west edge of the cornfield, the dirt bike entered Thompson Road in the lane in which he was driving, headed straight toward him, and then turned north.

Swoboda testified that when he first observed the dirt bike, he took his foot off the gas. He stated that he swerved into the ditch on the north side of the road as soon as the dirt bike entered onto Thompson Road. He did not slam on his brakes until after he veered into the grassy area to the north of the road and did not sound his horn before colliding with the dirt bike. Swoboda further stated that his truck did not slide before the collision. According to Swoboda, his vehicle collided with the dirt bike in the grassy area adjacent to the road. Apparently, both drivers veered toward each other in their attempts to avoid each other.

After hitting the dirt bike, the truck continued west through the grassy area, dragging the dirt bike and its two riders underneath it. According to Swoboda, the dirt bike and the truck came to a stop at the west edge of the Tregos' driveway. The dirt bike and its riders were still under the truck at that time. Swoboda testified that after the truck came to a stop, he immediately jumped out and saw both the dirt bike and its riders underneath the truck. He stated that he then returned to the truck, radioed other Stokely personnel to request an ambulance, and subsequently ran to the Trego residence to request Penny Trego to call an ambulance.

Penny Trego testified that after summoning help, she ran to the scene of the accident. Kirby was beyond help, but Ricky was still alive. Penny Trego stated that she held him and tried to reassure him, and he nodded.

Dennis Carter, an investigator with the Hoopeston police department, also noticed life signs in Ricky at the scene of the collision. However, Ricky was dead on arrival at the hospital.

Vermilion County sheriff's deputy John Howard testified that he did not recall seeing anything at the scene of the accident which would indicate the path of the dirt bike immediately prior to the collision. He did, however, observe dents on the right side of the dirt bike which coincided with dents on the front of the pickup truck. In Howard's opinion, this indicated a broadside collision.

Carter further testified that there was no physical evidence at the scene of the accident which indicated that Swoboda's account was mistaken. He stated that there was no evidence of braking on the part of either Ricky or Swoboda. According to Carter, there could have been some braking by Swoboda, but there would have been no physical evidence of it unless the brakes on the truck locked up.

Both plaintiff and Cathy Moore testified that Ricky had been operating the dirt bike for approximately four years. Plaintiff stated that Ricky was a 14-year-old eighth grader at the time of the accident and that he had never had a license or permit to operate the dirt bike. According to plaintiff, Ricky was allowed to operate the dirt bike without supervision, but was not permitted to have passengers on it, other than Kirby.

The parties each presented the testimony of an expert witness. Plaintiff's expert was Tony Becker, a Bloomington police officer experienced in accident reconstruction. Based on his review of Swoboda's testimony and that of investigating police officers, as well as his independent observations, measurements, and tests conducted at the scene of the collision, he concluded that given Swoboda's estimates of the speed of the dirt bike and the speed of his truck before the collision, the dirt bike would have been much closer to Thompson Road when Swoboda first observed it than the 25 to 30 yards stated by Swoboda. However, Becker did not dispute Swoboda's testimony as to the paths of the vehicles before the collision. Also, Becker acknowledged that he stated in his report, "there was no explanation given to the lack of perception by the motorcycle as to the pickup while both were still in motion."

Defendants' expert was Louis Metz, a professor of engineering at the University of Illinois. He stated that the dirt bike was upright, moving, and generally headed north when it was hit broadside by the pickup truck.

### B. *Directed Verdict, Judgment n.o.v.*

Defendants assert that there was no evidence which contradicted Swoboda's testimony as to the path of the dirt bike prior to the collision and no other evidence as to how the accident occurred. Defendants suggest that because more than one conclusion could be drawn from the circumstantial evidence which was presented at trial, the evidence presented did not support the jury's negligence findings.

Plaintiff asserts that Swoboda had the best opportunity to perceive the danger to Ricky and to take appropriate steps to avoid the collision, and that the jury thus could properly have concluded that

Swoboda did not exercise proper care to avoid colliding with Ricky's dirt bike. Plaintiff also asserts that, contrary to defendants' contentions, the fact that more than one inference may be drawn from circumstantial evidence does not preclude the use of that evidence to support a finding of negligence.

 █ Directed verdicts should be entered, and judgments *n.o.v.* granted, only when all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1060-61, 466 N.E.2d 1064, 1069-70.) As noted by plaintiff, whether certain conduct constitutes negligence is seldom determined as a matter of law. Instead, this is a matter best left to the jury. *Johnson v. Colley* (1986), 111 Ill. 2d 468, 474, 490 N.E.2d 685, 688.

 In support of defendants' argument concerning the purported insufficiency of the evidence of negligence on the part of Swoboda necessary to sustain the judgments in plaintiff's favor, defendants rely principally on cases where the driver of a vehicle drove through a stop sign and collided with a vehicle traveling on a preferential highway. In such cases, courts have held that the driver on the preferential highway has no duty to expect that a driver on a nonpreferential highway will disobey a stop sign and collide with his vehicle. In most of these cases, the driver of the vehicle subject to the stop sign did not begin to move through the intersection until it was too late for the driver on the preferential highway to avoid a collision. (See, *e.g.*, *Salo v. Singhurse* (1989), 181 Ill. App. 3d 641, 537 N.E.2d 339; *Hasty v. Kilpatrick* (1985), 130 Ill. App. 3d 859, 474 N.E.2d 867.) In *Hasty*, however, this court stated, "A motorist on a preferential road does not possess an absolute right under all circumstances ***." (*Hasty*, 130 Ill. App. 3d at 863, 474 N.E.2d at 870.) Moreover, in *Salo*, the court stated the following with regard to the duty of care of a motorist on a preferential highway:

> "He too must keep a proper lookout, observe due care in approaching and crossing intersections and drive as a prudent person would to avoid a collision when danger is discovered or, by the exercise of reasonable care, should have been discovered." *Salo*, 181 Ill. App. 3d at 643, 537 N.E.2d at 341.

Defendants also rely on the supreme court's recent decision in *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738. In *Dunn*, the decedent drove a motor vehicle into the side of a stopped freight train. The supreme court held that the rail-

road had no duty to provide the oncoming motorist with warnings of the train's presence (in addition to the mere presence of the train at the crossing) because, under a contrary rule, "a railroad would never know, until after an accident had occurred, whether the measures it had taken to warn motorists were sufficient to discharge its duty [of care]." *Dunn*, 127 Ill. 2d at 366-67, 537 N.E.2d at 745.

In this case, unlike in *Dunn*, one of the defendants was aware, or, through the exercise of reasonable caution and circumspection, should have been aware of circumstances which presented a potential danger to other individuals. We deem the following statement from *Mort v. Walter* (1983), 98 Ill. 2d 391, 397-98, 457 N.E.2d 18, 22, to be applicable here:

> "This court has often held that knowledge of hazardous conditions must be imputed to litigants when the danger of one's actions would be apparent through the exercise of 'reasonable precaution and circumspection.' [Citations.] The rule has been aptly phrased by our appellate court: '[O]ne cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see.' (*Pantlen v. Gottschalk* (1959), 21 Ill. App. 2d 163, 170.)"

Although in *Mort*, unlike in the present case, the individual struck by a vehicle was not subject to an adult standard of care, the above-quoted principles are equally applicable when the actions of another present a danger to individuals who are subject to that standard. See *Pantlen*, 21 Ill. App. 2d at 165, 157 N.E.2d at 551.

■ The evidence presented at trial is sufficient to support the jury's conclusion that Swoboda negligently breached his duty of ordinary care by not taking appropriate steps to avoid a collision although he had an opportunity to do so. The jury could reasonably have concluded that if Swoboda had braked when he first saw the dirt bike near the road, rather than merely taking his foot off of the gas, the collision would not have occurred, or the impact would have been lessened. Also, the jury could reasonably have found that if Swoboda had sounded the truck's horn when he first saw the dirt bike on or near the road, the accident could have been prevented. Finally, the jury could have discounted Swoboda's testimony that he was driving only 45 to 50 miles per hour before the collision, given the testimony of plaintiff's expert which suggested that Swoboda's testimony as to the

dirt bike's speed and his speed when he first saw the dirt bike may have been inaccurate. (See *Mort*, 98 Ill. 2d at 398-99, 457 N.E.2d at 21-22; *Harris v. Day* (1983), 115 Ill. App. 3d 762, 769, 451 N.E.2d 262, 265.) In view of the above, the fact that Swoboda's testimony as to the paths of the vehicles before the collision is undisputed is not of major significance with regard to the sufficiency of the evidence to sustain the jury's verdict.

■ Defendants' contention that circumstantial evidence that supports more than one conclusion cannot sustain a negligence finding is also untenable. In *Mort*, the supreme court stated:

> "Negligence may be established by using either direct or circumstantial evidence [citations] and, contrary to defendant's assertion, the use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. Instead, circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom [citations], and the facts established by such inferences are considered when an issue is decided as a matter of law or a verdict is directed." (*Mort*, 98 Ill. 2d at 396-97, 457 N.E.2d at 21.)

To the extent that *Royal Elm Nursing & Convalescent Center, Inc. v. Northern Illinois Gas Co.* (1988), 172 Ill. App. 3d 74, 79, 526 N.E.2d 376, 379, cited by defendants, supports a different result, we conclude that decision is contrary to the unequivocal holding of the supreme court in *Mort*, and we therefore decline to follow it.

### C. *Manifest Weight*

In the alternative, defendants argue that they should have been granted a new trial on the estate and family expense claims because the jury's verdict was contrary to the manifest weight of the evidence. Defendants further assert that because Ricky's actions were to be judged by the standard of care applicable to an adult, the assessment of 90% fault against Swoboda and only 10% fault against Ricky was contrary to the manifest weight of the evidence and totally unreasonable. Defendants make the same argument regarding the assessments of 5% fault against plaintiff and Cathy Moore.

Plaintiff argues that considering the evidence in the light most favorable to him, the circuit court did not abuse its discretion in denying defendants a new trial. Plaintiff further asserts that in considering whether the finding that Ricky was 10% negligent is contrary to the manifest weight of the evidence, we should not view Ricky's conduct in isolation but rather in relation to Swoboda's conduct. Plaintiff maintains that if Ricky's conduct is considered in the context of Swo-

boda's conduct, the finding of 10% negligence on the part of Ricky is not contrary to the manifest weight of the evidence.

■■ ■ A new trial should be granted when the verdict is contrary to the manifest weight of the evidence. (*Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 729, 511 N.E.2d 246, 250.) When ruling on a motion for a new trial, the evidence must be considered in the light most favorable to the opposing parties (*Kure v. Sluski* (1989), 186 Ill. App. 3d 472, 474, 542 N.E.2d 1152, 1154), and the decision whether to grant a new trial is committed to the trial court's sound discretion. (*Cadral Corp. v. Solomon, Cordwell, Buenz & Associates, Inc.* (1986), 147 Ill. App. 3d 466, 483, 497 N.E.2d 1285, 1296.) Because there is sufficient evidence from which the jury could have concluded Swoboda breached his duty of care, we hold the jury's verdicts on the estate's and plaintiff's family expense counts are not contrary to the manifest weight of the evidence. Defendants, therefore, are not entitled to a new trial on these actions based on the insufficiency of the evidence.

Defendants strenuously contend that the jury's assessments of only 10% fault against Ricky and 5% against each of his parents are decidedly contrary to the manifest weight of the evidence. Since, for reasons we will presently explain, we conclude defendants are entitled to a new trial on the estate and family expense counts because of other trial errors, we need not reach the question of whether there was sufficient evidence to justify the jury's apportionment of fault among the respective parties.

### D. *Estate's Cause of Action*

In addition to their arguments concerning the sufficiency of the evidence to support the jury's negligence findings, defendants assert that there is insufficient medical evidence of conscious pain and suffering on the part of Ricky to provide a basis for the damages awarded to his estate. Plaintiff responds that in actions that survive a decedent, there is no requirement that medical evidence be introduced proving that pain and suffering occurred prior to death. Because, plaintiff asserts, there was sufficient lay testimony presented relevant to Ricky's pain and suffering, the damages awarded on that theory are supported by the evidence.

■■ There are no Illinois cases requiring medical testimony establishing consciousness prior to death as a prerequisite to obtaining damages in a surviving cause of action. Rather, courts have routinely relied on lay testimony describing the decedent's actions prior to death in order to determine whether there is sufficient evidence to

support damages awards in these cases. See, *e.g., Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 1072-73, 436 N.E.2d 623, 628.

■■ Here, Penny Trego testified that when she arrived at the accident scene, Ricky was conscious. She stated that she tried to reassure him and he nodded. Also, Carter found a pulse on Ricky when Carter arrived at the scene of the collision. This evidence, together with the evidence concerning Ricky's injuries, was sufficient to sup-. port a conclusion that Ricky experienced conscious pain and suffering prior to his death. See *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 890, 467 N.E.2d 599, 609; see also *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 116, 499 N.E.2d 1373, 1377.

### E. *Wrongful Death*

Finally, defendants contend that there is no evidence to support damage awards of $163,500 to each of Ricky's parents for wrongful death. Because the jury's determination that plaintiff and Cathy Moore were negligent requires that these wrongful death awards be reversed, we need not address this argument.

### III. OTHER INSTRUCTION ISSUES

■■ Additionally, defendants raise other jury instruction issues. First, they assert that the jury should have been instructed to reduce Ricky's parents' pecuniary award by the amount of future child-rearing expenses they would have incurred had Ricky lived. Plaintiff contends that defendants waived this issue by failing to (1) tender an instruction on reducing damages in the amount of future child-rearing expenses, and (2) introduce evidence upon which the jury could have premised a reduction in plaintiff's damages to account for future child-rearing expenses.

The record supports plaintiff's waiver argument with regard to this issue. By not tendering and obtaining a ruling upon such an instruction, defendants waived their contention that they were entitled to have such an instruction given. *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 549, 475 N.E.2d 817, 821.

Second, defendants contend that the trial court erred in refusing instructions that would have required the jury to judge Ricky's actions by the standard of care applicable to an adult. Plaintiff responds that defendants' proposed instructions concerning the adult standard of care were not IPI instructions and that defendants asserted in closing argument (without objection) that Ricky was subject to the same standard of care as an adult.

Defendants' instruction No. 14 read: "Both RICKY MOORE, JR., and DOUGLAS SWOBODA are to be held to the standard of care of an adult." Defendants' instruction No. 15 read: "Both drivers in this case, RICKY MOORE, JR., and DOUGLAS SWOBODA, are to be held to the standard of ordinary care of an adult." Neither of these instructions is contained in the applicable pattern instructions (IPI Civil 2d) and both were refused by the trial court.

■■■■ Minors operating motor vehicles and minibikes on public streets and roads are subject to the same standard of care as adults (see, *e.g.*, *Baumgartner v. Ziessow* (1988), 169 Ill. App. 3d 647, 653-54, 523 N.E.2d 1010, 1014), and the jury should have been so instructed. Where, as in this case, there is no pattern jury instruction covering a point of law on which the jury should be instructed, court and counsel must devise appropriate instructions, and the jury should be given those instructions. (See 134 Ill. 2d R. 239(a); *Department of Public Works & Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 315-16, 371 N.E.2d 616, 618-19.) The fact that defendants' adult-standard-of-care instruction was not an IPI instruction is irrelevant. Because defendants' instruction No. 15 provides that the standard of *ordinary* care of adults applies to both Ricky and Swoboda, it is more clear and accurate than defendants' instruction No. 14. We therefore hold that the trial court should have given the jury defendants' instruction No. 15.

Defendants' proposed instruction No. 16, which the circuit court also rejected, read as follows:

> "It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision." IPI Civil 2d No. 70.01, at 260.

■■■ This instruction is appropriate when an issue of breach of a common law duty is involved in a case arising from an accident on a public highway. (See generally IPI Civil 2d No. 70.01, Notes on Use, at 260.) In this case, plaintiff alleged breach of common law duties on the part of both defendants, but there was no instruction specifically defining the common law duty of persons operating motor vehicles on public highways. Therefore, the trial court erred in rejecting defendants' instruction No. 16.

Similarly, defendants contend that it was error for the trial court to instruct the jury on the issue of whether Swoboda kept a proper lookout for *children* near the highway. Plaintiff responds that a person such as Swoboda should have anticipated the presence of children

on the country road on which he was traveling and, thus, defendants' objection to this instruction is without merit.

■ An issues instruction concerning a duty to keep a lookout for children near a highway may confuse the jurors in cases, such as this one, in which the decedent is subject to an adult standard of care. While an instruction concerning failure to keep a proper lookout for cyclists near the highway would have been appropriate, it was error to instruct the jury that an issue was whether Swoboda kept a proper lookout for *children* near the highway.

■ Because these instruction errors substantially tainted the foundation upon which the jury deliberated, we find defendants are entitled to a new trial on the estate and family expense counts. The trial court's denial of defendants' post-trial motion in that regard is reversed.

### IV. EXAMINATION OF WITNESSES AND ADMISSION OF EVIDENCE

Defendants also maintain they are entitled to a new trial because the trial court improperly restricted their examination of plaintiff's expert and erred in admitting and excluding items of evidence. Because this case will be partially retried, we will address only those issues likely to arise again.

### A. *Cross-examination*

Defendants assert that their cross-examination of plaintiff's expert witness, Tony Becker, was unduly restricted. Becker, a police officer, testified regarding time and distance calculations. Oddly, defendants argue that plaintiff qualified Becker as an expert accident reconstruction witness, while plaintiff insists he did not. The question which defendants contend Becker should have been ordered to answer over objection at trial was a query as to where the dirt bike came from prior to the collision. Defendants assert plaintiff opened the door to this question by asking Becker, on direct examination, whether the photographs of the accident scene showed any evidence of braking by Swoboda.

Plaintiff argues that defendants could not make Becker their witness and require him to testify beyond the scope of his testimony on direct examination. This objection was sustained. On appeal, plaintiff asserts that defendants made no offer of proof as to what would have been established by the questions which defendants sought to ask Becker.

■ The record provides no basis for holding the trial court erred in sustaining plaintiff's objection to this question. Defendants did not

present an offer of proof as to this question, and it is not clear what Becker would have answered, what the basis for his answer would have been, or what specific purpose his answer would have served. Therefore, defendants waived their argument that the trial court erred in sustaining plaintiff's objection. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 19-20 (5th ed. 1990).

## B. *Habit Testimony*

Defendants next contend that the trial court erred in admitting testimony by plaintiff concerning Swoboda's manner of operating motor vehicles at times other than on the day of the fatal accident. Defendants assert that in addition to its inadmissibility as habit testimony, this testimony was inadmissible because of lack of similarity of sites, because plaintiff had no experience or expertise in judging speed, and because plaintiff was not specific as to exactly how fast Swoboda was driving when plaintiff observed him. Plaintiff contends that defendants waived any errors in admission of this testimony by failing to pose sufficiently specific objections to it and asserts that in any event, the admission of this testimony was harmless.

On direct examination, plaintiff made the following statements concerning his observations of Swoboda's driving on days prior to the fatal accident: (1) "I couldn't tell how fast [he was driving] because I didn't have no radar gun or nothing. I didn't follow him to see, but I would say that he was speeding"; (2) "[When passing another car while traveling on a highway in an opposite direction from that in which plaintiff was driving, Swoboda] was pretty close to me—close enough I could tell who it was—before he got back over [into his lane of traffic]"; and (3) "Like I said, I don't have no radar gun. I couldn't really indicate how fast he was going, but he was in a hurry." The first and third statements referred to Swoboda's driving on the streets of Hoopeston. Defendants' counsel objected to the first of these statements on grounds of vagueness, lack of specificity, and lack of foundation. Counsel objected to the last two statements on general relevancy grounds.

Plaintiff's waiver arguments are not well taken. Defendants objected to this testimony on the basis of either vagueness, lack of foundation, or irrelevance. If evidence and the inferences sought to be drawn therefrom are so vague or conjectural that they are not helpful in proving or disproving a matter in controversy, the evidence is not probative. Categories of evidence which are of little or no probative value with respect to the factual issues involved in a case are not rele-

vant. (*North Chicago Street Ry. Co. v. Cotton* (1892), 140 Ill. 486, 501, 29 N.E. 899, 903; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.1 (5th ed. 1990).) The objections of defense counsel to these statements by plaintiff were sufficiently specific to inform both the court and opposing counsel of the true nature of the objections.

 The first and third of the above-quoted statements of plaintiff demonstrate uncertainty as to exactly how fast Swoboda was driving when plaintiff observed him. Although plaintiff indicated in the first statement that he thought Swoboda was speeding, he did not state what the applicable speed limit was or the miles per hour by which Swoboda exceeded that limit. Assuming, without deciding, that these statements were admissible as habit testimony, they were so vague as to be irrelevant for the purpose of establishing a habit. (See *Cairns v. Hansen* (1988), 170 Ill. App. 3d 505, 514, 524 N.E.2d 939, 946.) For this reason, the first and third of plaintiff's statements concerning Swoboda's manner of driving should not have been admitted.

 The second statement concerning Swoboda's manner of operating motor vehicles apparently was introduced for the purpose of establishing that Swoboda had, on a prior occasion, driven a motor vehicle in a reckless or careless manner. Evidence of a person's conduct on one occasion is irrelevant to proving that the same person likely engaged in the same conduct on a subsequent occasion. (*Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 901-02, 471 N.E.2d 946, 950; see *Stephens v. Collison* (1928), 330 Ill. 48, 59-60, 161 N.E. 68, 73.) Given our holding that plaintiff's first and third statements concerning Swoboda's manner of operating motor vehicles were improperly admitted, it follows that the second statement also should not have been admitted. The single incident of possible careless or reckless driving on the part of Swoboda described in this statement is not probative as to his manner of driving on subsequent occasions.

### C. *Motions in limine*

Defendants further assert that the trial court improperly granted a motion *in limine* filed by plaintiff which barred Sergeant Carter of the Hoopeston police department from testifying that he stopped Ricky on a previous occasion for riding his dirt bike in the street. The proposed testimony of Carter as to this matter is inadmissible for the same reason that plaintiff's testimony concerning the manner in which Swoboda drove his truck on a highway on a previous occasion is inadmissible. It is irrelevant for the purpose of establishing that

Ricky behaved in the same or in a similar manner on a subsequent occasion. *Pagel*, 128 Ill. App. 3d at 902, 471 N.E.2d at 951.

Defendants also assert that the trial court erred in granting a portion of plaintiff's motion *in limine* prohibiting any reference to Ricky wearing or not wearing a helmet. Defendants assert that evidence as to the use of helmets should at least have been ruled admissible as to the issue of Ricky's parents' liability for contribution. Defendants claim that such evidence could have established a lesser amount of control over Ricky by his parents, and thus, could have provided a basis for assessing a greater percentage of fault against Ricky's parents. Plaintiff argues that the relevancy of this evidence is extremely remote and that defendants waived this issue by not making an offer of proof as to the wearing of helmets.

In ruling on plaintiff's motion *in limine*, the trial court, in effect, ordered defendants to refrain from referring to the use of helmets, unless it could be established that the cause of Ricky's death was a head injury. The court, however, did allow defendants to refer to the fact that Ricky and Kirby were not wearing anything on their heads, including baseball caps or sun visors, which could have obstructed their vision of vehicles on the roadway at the time of the collision.

Neither party presented evidence that the cause of Ricky's death was a head injury. Therefore, whether he was wearing a helmet at the time of the fatal accident is not relevant to the issue of what caused his death. Generally, evidence of failure to wear a motorcycle helmet (or other protective devices, such as seat belts) is inadmissible for the purpose of establishing contributory negligence. (*Hukill v. DiGregorio* (1985), 136 Ill. App. 3d 1066, 1067-68, 484 N.E.2d 795, 796; see also *Clarkson v. Wright* (1985), 108 Ill. 2d 129, 133-34, 483 N.E.2d 268, 270.) Moreover, defendants had ample opportunity to present other evidence as to the amount of supervision Ricky's parents exercised over him. The trial court did not err in excluding evidence concerning the use of helmets.

Defendants next argue that the trial court erred in granting the portion of plaintiff's motion *in limine* which prohibited defendants from introducing evidence that Ricky had been "held back" in school for one year and, but for this, would have been a high-school freshman, rather than an eighth grader, at the time of his death. Defendants contend that this evidence would have established that Ricky had more experience than a typical eighth grader and, thus, would have been relevant in judging his actions at the time of the collision. Plaintiff contends that this argument is without merit because the jury was

informed of both Ricky's birthday and his grade in school and could have drawn its own conclusions from this evidence.

If the court had admitted evidence that Ricky had been "held back" in school, the likelihood is just as great that the jury could have inferred that he was learning impaired and, thus, had a lesser degree of knowledge and experience in the affairs of life as that he had a greater degree of knowledge and experience than the typical eighth grader. Considering the jury was informed of both Ricky's birthday and his grade in school, the court's refusal to allow defendants to present evidence that he was one grade behind in school was not an abuse of its discretion.

### D. *Photograph*

Defendants further assert that the trial court should not have admitted plaintiff's exhibit No. 100, a photograph of Ricky's body, taken after his death, which shows the body naked and lying on an examining table. Very large abrasions are noticeable on the body's face and torso. The defendants state (1) there was never any dispute that Ricky died of the injuries he sustained; (2) there was adequate testimony as to the condition of Ricky's body after the collision; and (3) Ricky's death certificate, which was admitted into evidence, adequately described the cause of his death. On this basis, defendants contend that the photograph of Ricky's body was not probative as to any material fact, and any probative value was far outweighed by its prejudicial impact. Defendants assert this photograph served no real purpose other than to horrify the jurors and arouse their emotions against defendants.

The only cases cited by defendants in which photographs of bodies of injured or deceased persons were held inadmissible are *People v. Coleman* (1983), 116 Ill. App. 3d 28, 451 N.E.2d 973, and *Hulsebus v. Russian* (1969), 118 Ill. App. 2d 174, 254 N.E.2d 184. In both of these cases, the photographs at issue did not depict the victim's body as it appeared soon after death occurred or injuries were sustained. In *Coleman*, the photograph depicted the decedent's body in a maggot-infested and partially autopsied condition. (*Coleman*, 116 Ill. App. 3d at 35-36, 451 N.E.2d at 977-78.) In *Hulsebus*, the photograph held inadmissible showed the injured party's body with a rubber and metal pipe-like device inserted between the lips, and with the face covered with what appeared to be blood and a brown mucus-like substance. (*Hulsebus*, 118 Ill. App. 2d at 180-81, 254 N.E.2d at 188.) By contrast, the photograph at issue depicts the decedent's body in exactly the same condition it was in at the time of death.

■■ ■ Generally, admission of a photograph of a decedent's body which shows the injuries which caused his or her death is within the discretion of the trial court, even if the photograph is gruesome. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519-20, 468 N.E.2d 1228, 1235.) Furthermore, the cumulativeness of a gruesome photograph with other evidence of injuries, or the availability of less prejudicial evidence of a decedent's injuries, normally are not grounds for reversing a trial court's exercise of its discretion in admitting such a photograph. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.8, at 145-46 (5th ed. 1990).) For these reasons, we conclude the circuit court's admission of the photograph of Ricky's body was not an abuse of its discretion.

### V. CONCLUSION

For the reasons stated, the trial court's order granting a new trial on the wrongful death counts is reversed, and the cause is remanded with directions that the court enter judgment in favor of defendants on those counts. The judgments in favor of plaintiff on the claims by the estate and for medical and funeral expenses are also reversed and the cause is remanded for a new trial on those counts.

No. 4—89—0957, Reversed and remanded with directions.
No. 4—90—0044, Reversed and remanded for a new trial.

LUND, P.J., and GREEN, J., concur.