THE ENVIRONMENTAL PROTECTION AGENCY, Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Fifth District No. 5—88—0035

Opinion filed July 21, 1989.

Neil F. Hartigan, Attorney General, of Springfield (William Seltzer and Charles Mikalian, Special Assistant Attorneys General, of counsel), for petitioner.

John M. Vandlik, of Pollution Control Board, of Urbana, for respondent Pollution Control Board.

No brief filed for respondent James Presnall.

JUSTICE CHAPMAN delivered the opinion of the court:
Petitioner, the Illinois Environmental Protection Agency (Agency), pursuant to section 31.1 of the Illinois Environmental Protection Act (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1031.1), filed an administrative citation against James Presnall, alleging that James Presnall had violated sections 21(p)(4), 21(p)(5) and 21(p)(9) of the Act. The Environmental Protection Agency's citation was initiated after

inspection by the Agency unveiled that Presnall's purported sanitary landfill facility had openly burned refuse, had uncovered refuse remaining from a prior operating day, and had deposited refuse at improper portions of its facility. Presnall filed a petition for review with the Illinois Pollution Control Board. The Board's opinion, issued September 17, 1987, ruled that the Agency's administrative citation was improperly issued to James Presnall. The citation was ordered stricken and the matter was accordingly dismissed. Upon motion for reconsideration filed by the Agency, the Board issued a supplemental opinion on December 17, 1987, affirming the Board's September 17, 1987, order. The Environmental Protection Agency does not appeal the Board's decision as to dismissal of the charge of open burning under section 21(p)(4) of the Act. However, the Agency does appeal the dismissal of the other charges brought pursuant to sections 21(p)(5) and 21(p)(9).

It is undisputed that James Presnall owns the property in question, which is located in Centreville, Illinois. Mr. Presnall testified at the hearing before the Illinois Pollution Control Board that he operates an asphalt paving and salvage business at the site. The property was at one time a swampy low area, and portions of it continue to lie in a low area which is periodically subjected to flooding. Mr. Presnall testified that, during his 27 years of operation at the site, he has brought in loads of "hard fill" to fill the marshy ground to render it useful for conducting business operations. He described "hard fill material" as dirt, wood, concrete and asphalt. The Environmental Protection Agency inspectors, on the other hand, testified that they observed quantities of refuse on the site. Site inspector Kenneth Mensing testified that in his opinion, said refuse consisted of non-salvageable material including construction or demolition debris, wood, boards, metal, concrete, asphalt and bricks.

Mr. Presnall denies the Agency's allegations that he dumps refuse on his land. He contends that he has the right to dump "hard fill material" on his property. He admits, however, that residents of Centreville dump their trash outside the fence surrounding his property and that instead of leaving the trash in the street, he testified that he often has his employees bring the trash onto his property.

After the hearing, the Pollution Control Board issued its opinion, wherein it ordered the citation against James Presnall stricken and the matter dismissed. The Board based its finding on its statutory interpretation of a section 21(p) offense as enforced by the administrative citation process. The Agency argues on appeal that the Board erroneously interpreted those portions of the Environmental Protection

Act pertinent to this case. The Agency contends that James Presnall does in fact operate a sanitary landfill operation and is required to have an Agency permit. Although a permit has not been issued to Mr. Presnall, the Agency contends Mr. Presnall is subject to the administrative citation process under section 31.1 for the alleged violations of Environmental Protection Act sections 21(p)(5) and 21(p)(9).

The statutory language at issue is section 21(p) of the Illinois Environmental Protection Act, which reads in pertinent part:

"§21. No person shall:

\* \* \*

(p) Conduct a sanitary landfill operation which is required to have a permit under subsection (d) of this Section, in a manner which results in any of the following conditions: \*\*\*." (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1021(p).)

The statute then lists 12 conditions that are prohibited. Subsection (d), which is referred to in section 21(p), states:

"§21. No person shall:

\* \* \*

(d) Conduct any waste-storage, waste-treatment, or waste-disposal operation:

(1) without a permit granted by the Agency or in violation of any conditions imposed by such permit, including periodic reports and full access to adequate records and the inspection of facilities, as may be necessary to assure compliance with this Act and with regulations and standards adopted thereunder; provided, however, that no permit shall be required for any person conducting a waste-storage, waste-treatment, or waste-disposal operation for wastes generated by such person's own activities which are stored, treated, or disposed within the site where such wastes are generated; or,

(2) in violation of any regulations or standards adopted by the Board under this Act.

This subsection (d) shall not apply to hazardous waste." (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1021(d).)

The dispute on appeal arises because of the Pollution Control Board's interpretation of the phrase "conduct a sanitary landfill operation." Although section 21(p) refers to "sanitary landfill operation," the Act does not define such term *per se*. The Act does provide a definition of "sanitary landfill":

"§3.41. 'Sanitary landfill' means a facility permitted by the Agency for the disposal of waste on land meeting the requirements of the Resource Conservation and Recovery Act, P.L.

94—580, and regulations thereunder, and without creating nuisances or hazards to public health or safety, by confining the refuse to the smallest practical volume and covering it with a layer of earth at the conclusion of each day's operation, or by such other methods and intervals as the Board may provide by regulation." (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1003.41.)

The Pollution Control Board found no distinction between the terms "sanitary landfill operation" and "sanitary landfill" as used in the Act. The Board reasoned that in excluding the term "sanitary landfill operation" in the definitional section of the Act, the legislature did not intend to create a term with new legal significance. Rather, the Board concluded, the legislature intended for the terms "sanitary landfill operation" and "sanitary landfill" to be used interchangeably.

 The Agency contests the Board's determination of the legislature's intent to render the terms "sanitary landfill" and "sanitary landfill operation" interchangeable under the Act. As a general rule, the legislature has authority to define for the purpose of the statute the terms used therein, and these definitions prevail in interpretation of the statute. (*Osco Drug, Inc. v. Department of Registration & Education* (1977), 54 Ill. App. 3d 936, 939, 370 N.E.2d 59, 62.) It is obvious that "sanitary landfill" and "sanitary landfill operation" are two distinct, although recognizably similar, terms. It is arguable that the term "sanitary landfill operation" is capable of a different meaning than the definitional meaning of "sanitary landfill" as provided in the Act. We recognize the general rule that where more than one construction is apparent, the court will choose that interpretation which leads to a logical result. (*City of Chicago v. Strauss* (1984), 128 Ill. App. 3d 193, 194, 470 N.E.2d 563, 564.) The aid to statutory construction which logically applies herein is *noscitur a sociis*, that a word is known by the company it keeps. (*Jarecki v. G.D. Searle & Co.* (1961), 367 U.S. 303, 309 L. Ed. 2d 859, 864, 81 S. Ct. 1579, 1583.) This aid contemplates that where two words or phrases of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations, and give color and expression to each other. (*People v. Goldman* (1972), 7 Ill. App. 3d 253, 255, 287 N.E.2d 177, 179.) Each section and provision should be construed in connection with every other part or section. (*Osco Drug*, 54 Ill. App. 3d at 939-40, 370 N.E.2d at 62.) We conclude therefore that the term "sanitary landfill operation" is synonymous with "sanitary landfill" as used in the Environmental Protection Act.

Upon finding that "sanitary landfill" and "sanitary landfill operation" were synonymous, the Pollution Control Board found "sanitary landfill operation" in section 21(p) to include only those permitted by the Agency. The Board explained its decision as one based on its "plain reading" of section 3.41. It is this reasoning upon which the Board based its conclusion that if a person is conducting a sanitary landfill operation without a permit, the operation is not a sanitary landfill as defined by the Act, and thus that person may not be issued an administrative citation for enforcement of section 21(p), since section 21(p) refers specifically to persons conducting sanitary landfills. The Agency argues that the Board's decision is based upon a fallacious interpretation of the definition of "sanitary landfill." The Agency contends that unpermitted sanitary landfills are equally subject to the administrative citation process. It argues that all permitted facilities are required to be permitted, and thus the Board's interpretation of section 3.41 as applying only to permitted facilities is redundant. We disagree.

██▄█ █ When the language of a statute is clear on its face, its meaning should be given effect without resort to supplemental principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339, 341, 469 N.E.2d 200, 202.) Words will be given their plain and ordinary meaning. (*Midwest Television, Inc. v. Champaign-Urbana Communications, Inc.* (1976), 37 Ill. App. 3d 926, 932, 347 N.E.2d 34, 39.) The definition of "sanitary landfill" provided in section 3.41 expressly refers to a facility "permitted" by the Agency. Furthermore, we cannot overlook the statute read as a whole. Provisions of a statute must be construed in light of the statute as a whole, to effectuate the intent of the legislature. (*People v. Ortega* (1982), 106 Ill. App. 3d 1018, 1023, 436 N.E.2d 606, 610.) Had the legislature wanted unpermitted disposal facilities to be subject to section 21(p), it could easily have adopted language consistent with section 21(d), instead of employing the term "sanitary landfill," which is statutorily defined as a "permitted facility." Section 21(d) employs the phrase "waste-disposal operation." "Waste-disposal site" is defined in the Act as a site on which solid waste is disposed. (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1003.54.) No requirement of a permit is imposed on a "waste-disposal site" under the statutory definition. Had the legislature desired section 21(p) to apply to both permitted and unpermitted facilities as section 21(d) applies, the legislature should have adopted the same or similar language as used in section 21(d). To ignore the obvious distinction the legislature imposed between a "sanitary landfill operation" and a "waste-disposal operation" would be to ignore the plain

language of the statute. We conclude that if a person is conducting a landfill operation without a permit, that landfill operation is not a sanitary landfill as defined by the Act, and therefore that person may not be issued an administrative citation for enforcement of section 21(p). It would be an act of judicial law making to conclude that the legislature did not mean what it said but intended something far beyond the obvious and literal reach of the statutory words. *Midwest Television, Inc.*, 37 Ill. App. 3d at 932, 347 N.E.2d at 39.

In reaching this conclusion we are not unmindful of the Agency's stance that discounting application of section 21(p) to unpermitted facilities is contrary to the legislature's intent in making available effective enforcement procedures for those in violation of the environmental laws. We note that the Agency is not without a remedy in acting to correct violations such as were alleged against James Presnall, even though Mr. Presnall did not have an Agency permit. A person acting without a permit may still be subject to sanctions for violations of environmental laws under the traditional enforcement procedures espoused in the Act. It is argued that the administrative citation process allows a relatively quick procedure for enforcement of environmental laws. However, absent specific statutory authority for applying the citation process, we are forced to conclude that the agency must operate under the traditional, albeit slower, enforcement process provided by the Act.

Subsequent to petitioner in this case filing for notice of appeal with this court, Illinois enacted Public Act 85—1346. Revisions of section 21 of the Environmental Protection Act are therein made. In particular, section 21(q) has been revised. Although section 21(q) is not specifically at issue in this case, it is pertinent to our decision. That section now reads:

> "(q) In violation of subdivision (a) of Section 21, cause or allow the open dumping of any waste in a manner which results in any of the following occurrences at the dump site:
>> (1) litter;
>> (2) scavenging;
>> (3) open burning;
>> (4) deposition of waste in standing or flowing waters;
>> (5) proliferation of disease vectors;
>> (6) standing or flowing liquid discharge from the dump site.
>
> The prohibitions specified in this subsection (q) shall be enforceable by the Agency either by administrative citation under Section 31.1 of this Act or as otherwise provided by this Act.

The specific prohibitions in this subsection do not limit the power of the Board to establish regulations or standards applicable to open dumping." (Ill. Rev. Stat., 1988 Supp., ch. 111½, par. 1021(q).)

In enacting this amendment to section 21, the legislature has expressed its desire to expand the statutory authority to issue administrative citations. This further supports our opinion that the legislature intended the administrative citation process to apply only where specifically authorized. In view of the foregoing, we affirm the decision of the Illinois Pollution Control Board.

Affirmed.

RARICK and HOWERTON, JJ., concur.