ROCHELLE DISPOSAL SERVICE, INC., Petitioner, v. POLLUTION CONTROL BOARD *et al.*, Respondents.

Second District   Nos. 2—93—0540, 2—93—0694 cons.

Opinion filed September 2, 1994.

Jack C. Slingerland, of Gallagher, Klein & Brady, of Sycamore, for petitioner.

Roland W. Burris, Attorney General, and Dorothy M. Gunn, of Pollution Control Board, both of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for respondent Pollution Control Board.

Douglas P. Floski, State's Attorney, of Oregon (Robbin J. Stuckert, Assistant State's Attorney, of counsel), for respondent County of Ogle.

Dennis R. Hewitt, of Rochelle, for respondent City of Rochelle.

JUSTICE McLAREN delivered the opinion of the court:

The petitioner, Rochelle Disposal Service, Inc., appeals two orders of the Illinois Pollution Control Board (Board), which found the petitioner guilty of violating the Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1001 *et seq.* (now codified, as amended, at 415 ILCS 5/1 *et seq.* (West 1992))). The petitioner appeals pursuant to section 41(a) of the Act (415 ILCS 5/41(a) (West 1992)), which provides for direct appeal of Board decisions to the appellate court. We affirm.

The petitioner operates a landfill in Rochelle under a contract with the City of Rochelle (City), which owns the facility and holds a permit from the Illinois Environmental Protection Agency (Agency). The permit requires the operator of every landfill to compact waste in layers and cover all refuse at the end of each collection day with six inches of "suitable material," typically dirt. The Agency inspects and investigates the landfills; it has delegated this authority for sites in Ogle County to the county's health department.

## CASE AC 91—45

On September 27, 1991, the Ogle County State's Attorney filed an administrative citation against the petitioner and the City, alleging that they permitted garbage at their landfill to remain uncovered overnight on August 1, 1991, in violation of section 21(o)(5) of the Act. (415 ILCS 5/21(o)(5) (West 1992).) The petitioner and the City filed a petition for review with the Board, and a hearing was conducted on April 29, 1992.

Stephen Rypkema, of the Ogle County health department, testified at the hearing that he arrived at the landfill at 6:58 a.m. on August 2, 1991, two minutes before the facility was to open for the day. He said that when he arrived, the landfill's bulldozer was in a shed and not at the "fill area." He said that he found an area of garbage in the "daily fill area" of approximately 60 feet by 120 feet that was not adequately covered.

Rypkema said that he met with Clyde Gelderloos, president of

Rochelle Disposal, at 7:30 that morning and told Gelderloos that it appeared that garbage was being covered on a weekly basis, rather than daily as required. Rypkema said that Gelderloos did not respond to the accusation.

Rypkema said that landfill operators typically remove the previous day's cover soil before new refuse is accepted and that the cover material typically is pushed to one side of the work area or on top of the "working face." Rypkema said that in this case, however, the cover could not have been scraped off prior to his arrival that morning because he did not see any cover soil piled on either side of the landfill, and he did not notice any activity when he arrived that would appear to be removal of cover soil.

Gelderloos testified that he did not see the area in question on the morning that Rypkema inspected the site until after additional garbage had been received for the day. Gelderloos said he was not at the site the previous evening when the landfill closed, and he did not know whether the cover was applied. He said that he assumed the cover was applied at the end of the day on August 1 and that it had been removed prior to Rypkema's arrival the next morning. Gelderloos said it was normal procedure at the site for the equipment manager to remove as much cover as necessary before the first load of refuse is received for the day. Gelderloos said that when the cover is removed, it is usually pushed to one side of the area or on the side of the refuse slope.

Ray Hartman, the equipment operator at the site, testified that he usually leaves the equipment shed at the site by 6:15 each morning and drives the bulldozer to the area where garbage will be accepted that day. He said he then removes the dirt cover and makes an opening for new refuse. He said that he worked on August 1, 1991, and covered the refuse with dirt at the end of that day. He said he arrived at the site at 6 a.m. the next day and removed all of the dirt cover, then went back to the equipment shed to repair a hose on the bulldozer before Rypkema arrived. Hartman said he was unable to remove all of the dirt cover and that patches of cover were left in the fill area. Hartman was unable to identify where in photographs of the site that were offered into evidence he had placed the dirt cover after removing it from the fill area. He was also unable to remember where he placed the cover after removing it.

On June 4, 1992, the Board denied a motion to dismiss, which the petitioner brought on the contention that it was not a proper party to an administrative citation action because the operating permit for the landfill was issued to the City and not to the petitioner. On January 7, 1993, the Board issued an opinion and order finding that

the petitioner and the City violated section 20(o)(5) of the Act and holding the defendants jointly and severally liable for a penalty of $500. The Board's opinion indicated that it was persuaded by Rypkema's testimony and photos of the area, which tended to corroborate his testimony. The petitioner filed a motion for reconsideration on February 8, 1993, which was denied on April 8, 1993. The petitioner filed a timely notice of appeal on May 7, 1993.

## CASE AC 92—26

The Ogle County State's Attorney filed an administrative citation against the petitioner and the City on April 2, 1992, alleging that the defendants violated section 21(o)(12) of the Act by not containing and collecting litter at the site at the end of an operating day. 415 ILCS 5/21(o)(12) (West 1992).

A hearing was conducted on February 11, 1993, at which Rypkema testified that he inspected the facility on January 29, 1992, arriving at 6:57 a.m. He said that there had been a three-inch snowfall on January 24 and that the ground was "mostly snow covered" on the day of his inspection. Rypkema said that when he arrived he spoke with the scale officer, who told him that the facility had not yet received any refuse for that day. Rypkema said there were "numerous pieces" of loose litter, paper and plastic at the landfill, most of which were "caught up in the weeds." He said the refuse was partially covered by snow and that he did not see any litter blowing in the area when he inspected the site. He said that Gelderloos told him that his firm was "working on" the problem.

Gelderloos testified that the litter remained on the site because of the inclement weather and because employees whose task it was to pick up loose litter were ill and did not, therefore, work the day before Rypkema's inspection.

On June 4, 1992, the Board issued an order denying the petitioner's motion to dismiss on the basis that it was an improper party. On May 20, 1993, the Board found that the petitioner violated section 21(o)(12) of the Act and was liable for a $500 penalty. The Board declared that the accumulation of litter could not be excused by weather conditions or the absence of "litter pickers." The petitioner filed a timely appeal with this court on June 7, 1993. Cases AC 91—45 and AC 92—26 were consolidated for this appeal.

On appeal, the petitioner alleges that the Board erred (1) by ruling that the petitioner was properly subject to the administrative citation proceedings of the Act; (2) by finding that the petitioner's actions were sufficient to sustain violations; and (3) by deciding that it had no authority to mitigate the $500 penalty assessed against the petitioner. For the following reasons, we affirm.

The petitioner first argues that it is not subject to the administrative citation proceedings provided for by section 31.1(a) of the Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1031.1(a) (now codified, as amended, at 415 ILCS 5/31.1 (West Supp. 1993))), because the City, and not petitioner, holds the State license to operate the sanitary landfill in question. This contention is wholly without merit.

Section 31.1(a) of the Act provides that the prohibitions specified in subsections (o) and (p) of section 21, which include the present matter, "shall be enforceable either by administrative citation under this Section or as otherwise provided by this Act." (Ill. Rev. Stat. 1991, ch. 111½, par. 1031.1(a) (now codified, as amended, at 415 ILCS 5/31.1(a) (West Supp. 1993)).) The petitioner was charged under the administrative procedures of section 31.1(a).

Section 21 of the Act provides, in pertinent part:

"§ 21. No *person* shall:

\* \* \*

(o) Conduct a sanitary landfill operation which is required to have a permit under subsection (d) of this Section, in a manner which results in any of the following conditions:

\* \* \*

(5) uncovered refuse remaining from any previous operating day or at the conclusion of any operating day, unless authorized by permit;

\* \* \*

(12) failure to collect and contain litter from the site by the end of each operating day." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 111½, par. 1021(o) (now 415 ILCS 5/21(o) (West 1992)).

The petitioner argues that only persons who actually are named as holders of State permits to operate landfills may be subjected to administrative citation proceedings under section 31.1(a) for violations enumerated in section 21. Because the City holds the permit, the petitioner argues, it may not be subjected to administrative citations. In support of its claim, the petitioner cites to *Environmental Protection Agency v. Pollution Control Board* (1989), 186 Ill. App. 3d 995 (hereinafter *EPA*), which held that only a person or entity which operates a sanitary landfill under a State license may be subjected to administrative citation proceedings under the Act. (*EPA*, 186 Ill. App. 3d at 1001.) The petitioner's reliance on *EPA* is misplaced.

The defendant in *EPA*, James Presnall, owned property in Centreville, Illinois, on which he operated an asphalt paving and salvage business. He was not in the landfill business and did not have a State

permit to run a landfill. Because his land was partially submerged, he brought in loads of "hard fill," including such unsalvageable materials as construction and demolition debris, wood, boards, metal, concrete, asphalt and bricks, to fill in the low areas of his property.

The State brought administrative citation proceedings against Presnall, which were held invalid by the appellate court in *EPA*. The court determined that only persons or entities which operate State-licensed sanitary landfills may be prosecuted under the Act's administrative citation proceedings. However, the court in *EPA* did not hold, as the petitioner suggests, that only the entity which is actually named as the holder of the State license to operate a sanitary landfill may be subjected to administrative citation proceedings.

█ Here, there is no doubt the petitioner is operating a State-licensed sanitary landfill. It has a contract with the City to operate the landfill, although the City holds the State permit. Whether the name on the permit reads "City of Rochelle" or "Rochelle Disposal" is a distinction without a difference.

Further, as the respondents correctly point out, the Act does not limit administrative proceedings to "permittees." Section 21 clearly states that no "person" shall engage in certain acts deemed to violate the Act. (Ill. Rev. Stat. 1991, ch. 111$^{1}$/2, par. 1021 (now codified, as amended, at 415 ILCS 5/21 (West 1992)).) When the language of a statute is clear and unambiguous, its meaning should be given effect without resort to other means of statutory construction. (*People v. Chandler* (1989), 129 Ill. 2d 233, 253.) Statutes should be read so as to yield logical and meaningful results and to avoid constructions that render specific language meaningless or superfluous. (*Reda v. Otero* (1993), 251 Ill. App. 3d 666, 669.) Here, the language of section 21 is clear. The word "person" does not mean that only "permittees" are included. The legislature could have used the word "permittee" if it had chosen to.

If we were to adopt the petitioner's view, the operator of a landfill could arguably avoid administrative citations by finding a "straw man" to apply for the State license. We are confident that the legislature did not intend such a loophole.

The petitioner's second argument, that the Board erred in finding it guilty of violating the Act, is also without merit.

The Act provides that a final order of the Board shall be invalidated on appeal only if the order is against the manifest weight of the evidence. (415 ILCS 5/41(b) (West 1992).) Factual findings made by an administrative tribunal are deemed *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372.) It is not the function of

this court to resolve factual inconsistencies or to reweigh the evidence. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 427-28.) We will find an agency's decision to be against the manifest weight of the evidence only if it can be determined from the record that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous. *Caliendo v. Martin* (1993), 250 Ill. App. 3d 409, 416.

■ Here, although there was conflicting evidence, there was more than sufficient evidence from which the Board could reasonably conclude that the petitioner violated the Act in both cases at issue. Thus, the Board's determination was not against the manifest weight of the evidence.

In case AC 91—45, the petitioner's witness, Ray Hartman, testified that he did, indeed, place covering dirt over the refuse at the site, as required under the Act, at the end of the day on August 1, 1991. The County of Ogle countered that with the opinion of investigator Stephen Rypkema, who testified that he saw no pile of cover soil on the morning of August 2, 1991, which he would have expected to find had the cover been placed over the refuse and then scraped away for the start of a new business day. Rypkema also said that if cover had been placed over the refuse, he likely would have noticed dirt mixed with the refuse, but he did not. From this, Rypkema concluded that the petitioner violated the Act by not covering refuse at the end of the August 1, 1991, work day. The Board found the petitioner guilty of not covering refuse on the day in question.

The petitioner now argues that because its witness provided the only "direct" evidence on the crucial question of "cover," and the County of Ogle's evidence was circumstantial, the Board was bound to find in favor of the petitioner. In support of its contention, the petitioner cites *Royal Elm Nursing & Convalescent Center, Inc. v. Northern Illinois Gas Co.* (1988), 172 Ill. App. 3d 74, for the proposition that the existence of a fact may not be inferred from circumstantial evidence when the existence of another fact inconsistent with the first can be inferred with equal certainty from the same evidence. (*Royal Elm*, 172 Ill. App. 3d at 79.) The petitioner's claim is unavailing because the rule cited in *Royal Elm* has been discredited.

In *Moore v. Swoboda* (1991), 213 Ill. App. 3d 217, the appellate court determined that the rule of *Royal Elm* cited above was contrary to the "unequivocal holding" of the supreme court case of *Mort v. Walter* (1983), 98 Ill. 2d 391. (*Moore*, 213 Ill. App. 3d at 233.) As *Moore* points out, our supreme court has concluded that circumstantial evidence will suffice whenever an inference may be reasonably

drawn from it, and the use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. (*Mort*, 98 Ill. 2d at 396-97; *Moore*, 213 Ill. App. 3d at 233.) The rule articulated by *Mort* and reaffirmed in *Moore* was acknowledged as controlling in the Appellate Court, Second District, in *Pfeifer v. Canyon Construction Co.* (1993), 253 Ill. App. 3d 1017, 1022.

The Board's decision in AC 92—26, that the petitioner violated section 21(o)(12) of the Act by failing to contain and collect litter at the site by the end of an operating day, was also not against the manifest weight of the evidence.

Section 31.1(d)(2) of the Act provides that no violation shall be found and no penalty imposed if "the Board finds that the *** [defendant] has shown that the violation resulted from uncontrollable circumstances." (415 ILCS 5/31.1(d)(2) (West 1992).) The petitioner claims that such "uncontrollable circumstances" existed on the date of the alleged infraction, January 29, 1992, in that a recent snowstorm covered much of the litter and that persistent cold weather had frozen litter to the ground, making it impossible to collect. Additionally, several of the landfill's "litter pickers" missed worked due to illness on the day before the county inspected the site. The Board rejected these claims, and there was sufficient evidence to support the Board's determination.

■ Clyde Gelderloos, president of the landfill operation, admitted that not all of the loose litter at the site was frozen to the ground. Thus, it was not "impossible" to pick up all of the loose litter. Additionally, it was not against the manifest weight of the evidence for the Board to rule that the absence from work of "litter pickers" did not excuse the failure to collect the loose litter. The Board noted in its opinion that Gelderloos testified that the firm had on other similar occasions hired temporary workers to pick up litter. However, there was no evidence presented at the hearing why such temporary help was not used in this instance.

Given the evidence presented at the hearing, it was not against the manifest weight of the evidence for the Board to conclude that the violation alleged in AC 92—26 occurred and that it was not excused by the "uncontrollable circumstances" exception of section 31.1(d)(2).

Finally, the petitioner claims that the Board erred in ruling that it did not have statutory authority to mitigate the $500 penalty assessed in each of the cases at issue. We conclude that the Board correctly determined that it had no such authority.

Section 42(b)(4) of the Act provides:

"In an administrative citation action under Section 31.1 of this

Act, any person found to have violated any provision of subsection (o) or (p) of Section 21 of this Act *shall pay a civil penalty of $500* for each violation of each such provision, plus any hearing costs incurred by the Board and the Agency." (Emphasis added.) 415 ILCS 5/42(b)(4) (West Supp. 1993).

The statute clearly and unambiguously states that the Board "shall" impose a $500 fine for violations brought under administrative citation proceedings. There is nothing in section 42(b)(4) that gives the Board the option to impose other than the $500 fine. The word "shall," when used in statutes, is typically taken as mandatory language. (*People v. Singleton* (1984), 103 Ill. 2d 339, 341-42.) The word "shall" is not mandatory only if the context of the statute or clear intent of the drafters indicates that it should be considered permissive. (*Singleton*, 103 Ill. 2d at 342.) Here, when section 42(b)(4) is read in context of the entire Act, it is clear that the administrative citation was meant to impose only a $500 penalty with no other options or provisions for mitigation.

It is instructive that violations of the Act brought under section 42(h) (415 ILCS 5/42(h) (West 1992)) permit the Board to consider factors in mitigation and aggravation. Under the well-known maxim of construction, *inclusio unius est exclusio alterius*, or the inclusion of one is the exclusion of the other (*Costello v. Governing Board of Lee County Special Education Association* (1993), 252 Ill. App. 3d 547, 561), it is clear that the legislature did not intend to permit mitigation of fines imposed under section 42(b)(4). By permitting mitigation and aggravation of assessments imposed under section 42(h) but making no such provisions in section 42(b)(4), the legislature was expressing its intention that the only penalty which may be imposed under section 42(b)(4) is a $500 fine.

Two cases cited by the petitioner in support of its position (*Archer Daniels Midland v. Pollution Control Board* (1986), 149 Ill. App. 3d 301, and *Wasteland, Inc. v. Pollution Control Board* (1983), 118 Ill. App. 3d 1041) are inapposite because they do not involve administrative citation actions, which are at issue here. Rather, those cases arose under section 42(h) of the Act, which, as we have noted, provides for mitigation by the Board.

The judgment of the Illinois Pollution Control Board is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.